## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JUDITH BARNETT,                          )
4373 Embassy Park Drive, N.W.            )
Washington, D.C. 20016,                  )
                                         )
                    Plaintiff,           )
                                         )
       v.                                )
                                         )       Civil Action No. _____
PA CONSULTING GROUP, INC.,               )
1750 Pennsylvania Avenue, N.W.           )
Suite 1000                               )
Washington, D.C. 20006,                  )
                                         )
                    Defendant.           )

### <u>NOTICE OF REMOVAL</u>

Defendant PA Consulting Group, Inc. ("PA"), by counsel, hereby notices the removal of

the action brought against it in the Superior Court of the District of Columbia, styled <u>Judith</u>

<u>Barnett v. PA Consulting Group, Inc.</u>, Civil Action No. 04-2576.  As grounds for removal PA

states as follows:

1.      On April 1, 2004, Plaintiff filed a Complaint against Defendant PA Consulting

Group, Inc. ("PA") in the Superior Court of the District of Columbia alleging claims of

discrimination on the basis of sex and age in violation of the District of Columbia Human Rights

Act, D.C. Code §2-1402.11.

2.      Pursuant to the parties' agreement and by Consent Order, PA filed its Answer and

Defenses to Plaintiff Complaint on May 7, 2004 in the Superior Court of the District of

Columbia.

3.      On July 6, 2004, counsel for Plaintiff presented counsel for PA a proposed

Amended Complaint alleging age discrimination in violation of the Age Discrimination in

Employment Act of 1967, 29 U.S.C. §621, et seq. On July 16, 2004, the Superior Court granted

Plaintiff leave to file the Amended Complaint, and deemed it filed that day. Thus, this Notice of

Removal is filed within 30 days of Defendant's receipt of Plaintiff's Amended Complaint from

which it "first ascertained that the case is one which is or has become removable." See 28

U.S.C. 1446(b).

    4.    Defendant filed its Answer to the Amended Complaint on July 26, 2004. A copy

of the Amended Complaint and all other papers served on Defendant, or otherwise served in this

case, are attached as Exhibit 1 in accordance with 28 U.S.C. §1446(a).

    5.    This Court has original jurisdiction over this action under 28 U.S.C. §1331 and

§1441(a), based on federal question jurisdiction because this civil action arises under the laws of

the United States.

**FEDERAL QUESTION**

    6.    In Count III of her Amended Complaint, Plaintiff alleges that "[t]he actions of PA

described herein constituted discrimination based on age, in violation of the Age Discrimination

in Employment Act, 29 U.S.C. §623(a)." (Plaintiff's Amended Complaint, ¶26).

    7.    In Count III of her Amended Complaint, Plaintiff also incorporates by reference

all of the allegations which also form the basis of her sex and age discrimination claims under

the D.C. Human Rights Act, D.C. Code §2-1402.11. (Plaintiff's Amended Complaint, ¶24).

    8.    Plaintiff's claim based on a violation of the Age Discrimination in Employment

Act arises the laws of the United States and constitutes a federal question for purposes of

jurisdiction under 28 U.S.C. §1331 and §1441(a).

    9.    The Court has supplemental jurisdiction over Plaintiff's state claims for age and

sex discrimination under the D.C. Human Rights Act as these claims are "so related to claims in

2

the action within such original jurisdiction that they form part of the same case or controversy under Article III of the Constitution of the United States." See 28 U.S.C. §1367(a). See also Surprise v. GTE Service Corp., 47 F. Supp. 2d 240, 242 (D. Conn. 1999)(Holding that where defendant properly removed plaintiff's ADEA claims from state to federal court under 28 U.S.C. §1441(a), the Court's "exercise of supplemental jurisdiction over the [p]laintiff's state law claims [was] appropriate since they form part of the same case or controversy and arise from the common nucleus of operative facts as the ADEA claim" and "as evidenced in part by the fact that Counts III and IV incorporate by reference many of the paragraphs alleging the conduct on which Counts I and II [were] based.").

## CONCLUSION

10.    Pursuant to 28 U.S.C. §1446(d), written notice of the filing of this Notice of Removal shall be promptly given to all adverse parties herein, and a copy of this Notice of Removal shall be filed with the Clerk of the Superior Court of the District of Columbia.

11.    For the reasons set forth above, this Court has subject matter jurisdiction over the entire action pursuant to 28 U.S.C. 1331.

12.    No admission of fact, law, or liability is intended by the Notice of Removal, and Defendant expressly reserves all defenses, affirmative defenses, and motions otherwise available to it.

WHEREFORE, Defendant PA Consulting Group, Inc. prays that this Court will assume jurisdiction over this action and will make such further orders herein as may be needed to properly resolve this controversy.

30466149v3

Respectfully submitted,

PA CONSULTING GROUP, INC.

By: _____
                    Counsel

Elizabeth A. Lalik (DC 447052)
Chekisha A. Mitchell (DC 477374,
admission pending to D.C. District
Court)
PILLSBURY WINTHROP LLP
1600 Tysons Boulevard
Mclean, Virginia 22102
Phone: (703) 905-2000
Fax:    (703) 905-2500

*Counsel for Defendant, PA
Consulting Group, Inc.*

## Certificate of Service

I certify that on this 26th day of July 2004, a true copy of the foregoing Defendant's

Notice of Removal was sent by U.S. Mail, postage pre-paid, to:

    Richard A. Salzman, Esq.
    HELLER, HURON, CHERTKOF,
    LERNER, SIMON & SALZMAN
    1730 M Street, NW Suite 412
    Washington, DC 20036
    (202) 293-8090

    *Counsel for Plaintiff*

_____

30466149v3

# EXHIBIT 1

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | | |
|---|---|---|
| JUDITH BARNETT, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No: 04-0002576 |
| | ) | |
| v. | ) | |
| | ) | Calendar #10 |
| PA CONSULTING GROUP, INC., | ) | |
| | ) | Judge James E. Boasberg |
| Defendant. | ) | |

## NOTICE TO SUPERIOR COURT OF REMOVAL TO FEDERAL COURT

NOTICE IS HEREBY GIVEN pursuant to 28 U.S.C. §1446(d) that on July 26, 2004 Defendant PA Consulting Group, Inc. filed a Notice of Removal to Federal Court in the above-captioned matter with the United States District Court of the District of Columbia. A copy of the said Notice is attached hereto.

YOU ARE ALSO ADVISED that, upon this filing with the Superior Court of the District of Columbia of the Notice of Removal to Federal Court, the Superior Court shall proceed not further unless and until the case is remanded.

DATED this 26th day of July 2004.

Respectfully submitted,

PA CONSULTING GROUP, INC.

By: _____
Elizabeth A. Lalik (DC 447052)
Chekisha A. Mitchell (DC 477374)
PILLSBURY WINTHROP LLP
1600 Tysons Boulevard
Mclean, Virginia 22102

*Counsel for Defendant*

30466145v2

## Certificate of Service

I certify that on this 26th day of July 2004, a true copy of the foregoing Notice to Superior

Court of Removal to Federal Court was sent by facsimile and U.S. Mail, postage pre-paid, to:

Richard A. Salzman, Esq.
HELLER, HURON, CHERTKOF,
LERNER, SIMON & SALZMAN
1730 M Street, NW Suite 412
Washington, DC 20036
(202) 293-8090

*Counsel for Plaintiff*

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

| | | |
|---|---|---|
| JUDITH BARNETT, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No: 04-0002576 |
| | ) | |
| v. | ) | |
| | ) | Calendar #10 |
| PA CONSULTING GROUP, INC., | ) | |
| | ) | Judge James E. Boasberg |
| Defendant. | ) | |

## NOTICE TO PLAINTIFF OF REMOVAL TO FEDERAL COURT

You are hereby notified that on July 26, 2004, Defendant PA Consulting Group, Inc. filed a Notice of Removal to Federal Court with the United States District Court for the District of Columbia.

A copy of said Notice of Removal is attached hereto and hereby served upon you.

DATED this 26th day of July 2004.

Respectfully submitted,

PA CONSULTING GROUP, INC.

By: _____
Elizabeth A. Lalik (DC 447052)
Chekisha A. Mitchell (DC 477374)
PILLSBURY WINTHROP LLP
1600 Tysons Boulevard
Mclean, Virginia 22102

*Counsel for Defendant*

## Certificate of Service

I certify that on this 26th day of July 2004, a true copy of the foregoing Notice to Plaintiff

of Removal to Federal Court was sent by facsimile and U.S. Mail, postage pre-paid, to:

Richard A. Salzman, Esq.
HELLER, HURON, CHERTKOF,
LERNER, SIMON & SALZMAN
1730 M Street, NW Suite 412
Washington, DC 20036
(202) 293-8090

*Counsel for Plaintiff*

2

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | |
|---|---|
| JUDITH BARNETT, | ) |
| | ) |
| | ) |
| Plaintiff, | )   Civil Action No. 04-2576 |
| | ) |
| v. | )   Calendar 10 |
| | )   Judge Boasberg |
| PA CONSULTING GROUP, INC., | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S ANSWER AND DEFENSES**
**TO PLAINTIFF'S AMENDED COMPLAINT**

Defendant PA Consulting Group, Inc. ("Defendant" or "PA"), by and through its

attorneys, for its Answer and Defenses to Plaintiff's Complaint hereby states as follows:

**ANSWER**

Jurisdiction

1.      PA admits that Plaintiff purports to bring this action under the District of

Columbia Human Rights Act, D.C. Code §§2-1401.01 et seq., and the Age Discrimination in

Employment Act ("ADEA"), 29 U.S.C. §§621 et seq., but denies the existence of any grounds

for relief against it under those statutes and specifically denies Plaintiff's allegation that PA

terminated her because of her sex and age.  The remaining jurisdictional allegations contained in

paragraph 1 of the Complaint state legal conclusions to which no response is required at this

time.  However, PA denies that the facts of this case support the exercise of any jurisdiction over

this matter.

Parties

2.      Upon information and belief, PA admits that Plaintiff is aged 57 and a citizen of the United States.  PA admits the remaining allegations contained in paragraph 2 of the Complaint.

3.      PA admits that it is a consulting firm that does business in many countries, as well as in Washington, D.C.  Whether PA is an employer as defined in D.C. Code §2-1401.02(10) and/or 29 U.S.C. §630(b) is a legal question to which no response is required at this time, but PA denies the existence of any grounds for relief against PA under the District of Columbia Human Rights Act.  PA denies each and every other allegation contained in paragraph 3 of the Complaint.

4.      PA lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 4 of the Complaint, and therefore denies them.

5.      PA admits that Plaintiff worked for a consulting firm which was acquired by PA around October 2000 and that the former firm's Transportation Practice, in which Plaintiff worked, served as the initial basis for PA's Transportation Practice.  That practice was headquartered in Washington, D.C.  PA further admits that Plaintiff worked in PA's Transportation Practice following the acquisition.  PA is without information sufficient to form a belief as to the truth of the other details alleged in paragraph 5 of the Complaint regarding Plaintiff's work history prior to PA, and therefore denies them.  PA denies each and every other allegation contained in paragraph 5 of the Complaint.

6.      PA is without information sufficient to form a belief as to the truth of the allegations contained in paragraph 6 of the Complaint regarding Plaintiff's work with her other firm, and therefore denies them.  As to the allegations contained in paragraph 6 of the Complaint regarding Plaintiff's work with PA, while PA admits that Plaintiff's work focused on

2

international trade generally, PA denies each and every one of those specific allegations as alleged.

7.     PA denies each and every allegation contained in paragraph 7 of the Complaint as alleged.

8.     PA admits that Plaintiff served as a Managing Consultant for PA.  PA further admits that generally speaking Partners are a level up on the corporate hierarchy from Managing Consultant.  PA is without information sufficient to form a belief as to the truth of the allegation regarding Plaintiff's career ambitions, and therefore denies that allegation.  PA denies each and every other allegation contained in paragraph 8 of the Complaint.

9.     PA denies each and every allegation contained in paragraph 9 of the Complaint.

10.     PA admits that Plaintiff had contact with the media during her employment at PA, but PA denies each and every other allegation contained in paragraph 10 of the Complaint.

11.     PA admits that James Miller rated Plaintiff's performance as "very good" on Plaintiff's Half Year Appraisal for 2003, that Mr. Miller noted on Plaintiff's Half Year Appraisal that she was making progress to partner level, and that Plaintiff received a numerical rating of "3" on a scale of 1 to 4 on that appraisal.  PA denies each and every other allegation contained in paragraph 11 of the Complaint.

12.     PA admits that Mr. Miller sent Plaintiff a letter (on or about October 17, 2003) stating that PA's Transportation Practice was being merged into the Information Technology practice, that PA was implementing a reduction in force, and that Plaintiff's position would be affected.  PA admits that Plaintiff was terminated effective November 14, 2003.  PA denies each and every other allegation contained in paragraph 12 of the Complaint.

13.     PA denies each and every allegation contained in paragraph 13 of the Complaint.

3

14.   PA denies each and every allegation contained in paragraph 14 of the Complaint.

15.   PA denies each and every allegation contained in paragraph 15 of the Complaint.

16.   PA denies each and every allegation contained in paragraph 16 of the Complaint.

17.   PA denies each and every allegation contained in paragraph 17 of the Complaint.

<u>Damages</u>

18.   PA denies each and every allegation contained in paragraph 18 of the Complaint.

19.   PA denies each and every allegation contained in paragraph 19 of the Complaint.

## COUNT ONE
## (ALLEGED) DISCRIMINATION BASED ON SEX

20.   PA adopts and restates its answers to paragraphs 1 through 19 of the Complaint as its answer to paragraph 20 of the Complaint.

21.   PA denies each and every allegation contained in paragraph 21 of the Complaint.

## COUNT TWO
## (ALLEGED) DISCRIMINATION BASED
## ON AGE IN VIOLATION OF THE DCHRA

22.   PA adopts and restates its answers to paragraphs 1 through 19 of the Complaint as its answer to paragraph 22 of the Complaint.

23.   PA denies each and every allegation contained in paragraph 23 of the Complaint.

## COUNT III
## (ALLEGED) DISCRIMINATION BASED
## ON AGE IN VIOLATION OF THE ADEA

24.   PA adopts and restates its answers to paragraphs 1 through 19 of the Complaint as its answer to paragraph 24 of the Complaint.

25.   PA denies each and every allegation contained in paragraph 25 of the Complaint.

26.   PA denies each and every allegation contained in paragraph 26 of the Complaint.

30465770v2

## RELIEF

PA denies that Plaintiff is entitled to the relief requested in paragraphs 1) through 7) or to any other relief in this action.

## JURY DEMAND

PA admits that Plaintiff is entitled to a trial by jury with respect to the legal issues in this case, but denies that Plaintiff is entitled to a trial by jury on any equitable issue, including, but not limited to front pay, attorney's fees or costs.

## ADDITIONAL DEFENSES

### First Defense

Plaintiff has failed to state a claim against Defendant, in whole or in part, upon which relief can be granted.

### Second Defense

The relief requested is barred to the extent Plaintiff has failed to mitigate her damages by failing to seek or obtain other employment following the termination of her employment with Defendant.

### Third Defense

The Complaint should be dismissed because Plaintiff has failed to meet the requirements for a private right of action under §2-1403.16 of the D.C. Human Rights Act.

### Fourth Defense

Plaintiff's claims are barred by the doctrine of unclean hands.

### Fifth Defense

The Complaint should be dismissed on the grounds that Plaintiff failed to satisfy applicable filing requirements and procedural prerequisites to suit.

30465770v2

## Sixth Defense

All actions taken by Defendant concerning Plaintiff were taken in good faith, for legitimate business reasons unrelated to Plaintiff's gender or age, and were in no way malicious, egregious, in bad faith, or in willful or reckless disregard of any legal rights of Plaintiff.

## Seventh Defense

Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations.

## Eighth Defense

Some or all of Plaintiff's claims are barred because Plaintiff failed to exhaust her administrative remedies.

## Ninth Defense

Plaintiff is not entitled to recover liquidated damages under the ADEA in that all actions taken by Defendant concerning Plaintiff were taken in good faith.

## Tenth Defense

Defendant denies all allegations of the Complaint not specifically admitted herein and reserves the right to assert additional defenses that may become relevant or apparent through the course of discovery or otherwise during the course of this litigation.

WHEREFORE, having fully answered, PA Consulting Group, Inc. respectfully requests that the Complaint against it be dismissed with prejudice, and that it be awarded its costs expended in the defense of this action, including reasonable attorney's fees.

Dated this 26th day of July 2004.

30465770v2

PA CONSULTING GROUP, INC.

By: _____
                    Counsel


Elizabeth A. Lalik (#447052)
Chekisha A. Mitchell (#477374)
PILLSBURY WINTHROP LLP
1600 Tysons Boulevard
Mclean, Virginia 22102
Phone: (703) 905-2000
Fax:    (703) 905-2500

*Counsel for Defendant, PA
Consulting Group, Inc.*


### Certificate of Service

I certify that on this 26th day of July 2004, a true copy of the foregoing Answer and Defenses to Plaintiff's Amended Complaint was sent by facsimile and U.S. Mail, postage pre-paid, to:

> Richard A. Salzman, Esq.
> HELLER, HURON, CHERTKOF,
> LERNER, SIMON & SALZMAN
> 1730 M Street, NW Suite 412
> Washington, DC 20036
> (202) 293-8090

*Counsel for Plaintiff*

_____

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

JUDITH BARNETT                                    )
                                                  )
                         Plaintiff,               )
                                                  )
                                                  )   Civil Action No. 04-2576
            v.                                    )
                                                  )
PA CONSULTING GROUP, INC.                         )   Calendar 10
                                                  )   Judge Boasberg
                         Defendant.               )
                                                  )

## ORDER

Plaintiff is granted leave to file the amended complaint previously lodged with the Clerk.

The amended complaint shall be deemed filed ~~on the date lodged~~ *this date.*  Defendant shall have 20 days

from the date of this Order to answer or otherwise plead.

Date: _July 16, 2004_

cc:

Douglas B. Huron 89326
Richard A. Salzman 422497
HELLER, HURON, CHERTKOF
LERNER, SIMON & SALZMAN
1730 M Street, NW
Suite 412
Washington, DC  20036
(202) 293-8090
Attorneys for Plaintiff

Elizabeth A. Lalik
Chekisha A. Mitchell
Pillsbury Winthrop LLP
1600 Tysons Boulevard
McLean, VA 22102
Attorneys for Defendant

ASSOCIATE JUDGE

James E. Boasberg

DOCKETED   JUL 19 2004

MAILED   JUL 19 2004



# Superior Court of the District of Columbia

Civil Division
Washington, D.C. 20001

SCHEDULING ORDER

```
┌─────────────────────────┐
│        FILED            │
│   IN OPEN COURT         │
│      JUN 1 6 2004       │
│    SUPERIOR COURT       │
│ OF THE DISTRICT OF COLUMBIA │
│     WASHINGTON, DC      │
└─────────────────────────┘
```

Case:   04ca002576

Caption: Barnett, J. vs PA Consulting Group

This ORDER is your official notice of dates and required Court appearances. It may not be modified except by leave of Court upon a showing of good cause; stipulations between counsel shall not be effective to change any deadlines in the order absent court approval.  Failure to comply with all terms may result in dismissal, default judgment, refusal to let witnesses testify, refusal to admit exhibits, the assessment of costs and expenses, including attorney fees, or other sanctions.

7/16/04
DATE

JUDGE   James E. Boasberg

Joint Pretrial Statement ✓   Separate Pretrial Statement ___

ADR Selected:        (Mediation)        Case Evaluation    Arbitration *

| | TRACK 1 | TRACK 2 | TRACK 3 | TRACK 4 |
|---|---|---|---|---|
| DEADLINE FOR DISCOVERY REQUESTS | 8/16/04 | 9/16/04 | 10/16/04 | _____ |
| EXCHANGE WITNESS LISTS | 8/16/04 | 9/16/04 | 10/16/04 | _____ |
| PROPONENT'S RULE 26(b)(4) STATEMENT | 8/23/04 | 9/16/04 | 10/30/04 | _____ |
| OPPONENT'S RULE 26(b)(4) STATEMENT | 9/07/04 | 10/16/04 | 12/04/04 | _____ |
| DISCOVERY CLOSED | 9/16/04 | 11/16/04 | 1/16/05 | _____ |
| DEADLINE FOR FILING MOTIONS | 10/01/04 | 12/01/04 | 2/01/05 | _____ |
| DISPOSITIVE MOTIONS DECIDED | 11/01/04 | 1/01/05 | 3/01/05 | _____ |
| ADR (Mediation/Case Evaluation | 11/16/04 -12/16/04 | 1/16/05 - 2/16/05 | 3/16/05 - 4/16/05 | _____ |
| PRETRIAL (ADR date plus approximately) | 30 DAYS | 60 DAYS | 60 DAYS | _____ |

The Civil Arbitration Rules govern arbitration procedures.  The filing parties must mail a copy of the complaint and answer to the arbitrator within 14 days of arbitrator assignment.  Any party to a non-binding arbitration may file a demand for trial de novo with the Multi-Door Dispute Resolution Division within 15 days after the arbitration award date.  In the event that a demand for a trial de novo is filed, the attached Post-Arbitraton Scheduling Order Shall be effective.

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

JUDITH BARNETT )
)
Plaintiff, )
) Civil Action No. 04-2576
)
v. ) Calendar 10
) Judge Boasberg
PA CONSULTING GROUP, INC. )
) Initial Conference: 7/16/04
Defendant. )

## CONSENT MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

With the consent of defendant, Plaintiff Judith Barnett moves for leave to file the attached amended complaint.

### POINTS AND AUTHORITIES

1. Plaintiff filed her original complaint on April 1, 2004, charging defendant PA Consulting Group, Inc. with discriminating against her on the basis of her sex, and her age, in violation of the District of Columbia Human Rights Act (DCHRA), D.C. Code §§ 2-1401.01 et seq., when she was terminated in November 2003.  The Initial Conference has not yet occurred, but PA has answered, and the parties have begun discovery.

2. Unlike the DCHRA, the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 et seq., contains certain administrative steps that must be met before suit can be filed. Those prerequisites have now been satisfied, and plaintiff wishes to amend her complaint to add a new Count Three, to plead her claim of age discrimination under the ADEA as well as the DCHRA.  Plaintiff wants to amend because the ADEA permits liquidated damages in an amount equal to lost earnings, see 29 U.S.C. § 626(b); such relief is not available under the DCHRA.

3.  Under SCCR 15(a), leave to amend is to be "freely given when justice so requires." That is true here, where the case is at a very early stage and plaintiff is not changing any of the factual allegations in the complaint.  Rather, she is simply adding a new theory of relief and is seeking damages consistent with that theory.

4.  Counsel certifies that defendant has been contacted about this motion in accordance with SCCR 12-I(a), and has consented to the relief requested herein.

For these reasons, plaintiff asks that the Court grant her leave to file the attached amended complaint.

Richard A. Salzman 422497
Douglas B. Huron  89326
HELLER, HURON, CHERTKOF
LERNER, SIMON & SALZMAN
1730 M Street, NW
Suite 412
Washington, DC  20036
(202) 293-8090

Attorneys for plaintiff

Certificate of Service

I certify that a copy of the foregoing was served by mail on July 14, 2004 upon:

Elizabeth A. Lalik
Chekisha A. Mitchell
Pillsbury Winthrop LLP
1600 Tysons Boulevard
McLean, VA 22102

Richard A. Salzman

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

JUDITH BARNETT               )
                                   )
               Plaintiff,     )
                                   )
                                   )   Civil Action No. 04-2576
      v.                        )
                                   )   Calendar 10
PA CONSULTING GROUP, INC.   )   Judge Boasberg
                                   )
               Defendant.   )

## AMENDED COMPLAINT FOR RELIEF FROM DISCRIMINATION IN EMPLOYMENT

### Jurisdiction

1. This is an action to remedy defendant's conduct in terminating plaintiff because of her sex and age, in violation of the District of Columbia Human Rights Act (DCHRA), D.C. Code §§ 2-1401.01 et seq., and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 et seq. This Court has jurisdiction over the DCHRA claims under D.C. Code §§ 2-1403.16 and 11-921, and over the ADEA claim under 29 U.S.C. § 626(c).

### Parties

2. Plaintiff Judith Barnett is a woman aged 57.  She is a citizen of the United States.

3. Defendant PA Consulting Group, Inc. (PA) is an international consulting firm doing business in Washington, D.C.  PA is an employer as defined in D.C. Code § 2-1401.02(10), and 29 U.S.C. § 630(b).

### Ms. Barnett's Record of Accomplishment

4. Plaintiff Barnett has a distinguished background as a senior government official, international trade consultant, corporate lawyer and litigator, law professor, public affairs

specialist and writer.  She has written for popular outlets including, most recently, the January 25, 2004 edition of the Outlook section of The Washington Post.  Her focus has been on the international arena, and she served during the administration of President Clinton as a Deputy Assistant Secretary of Commerce and as the Principal DAS for Trade Development.

5.  Following Ms. Barnett's service in the Clinton administration, she worked for a consulting firm which was acquired by defendant PA in October 2000.  The former firm's Transportation Practice, where Ms. Barnett worked, became one of PA's practice areas, headquartered in Washington, D.C.  Ms. Barnett remained with the Transportation Practice following the acquisition.

6.  With both her former firm and PA, Ms. Barnett developed an active practice in international trade.  While at PA, she represented the City of Tianjin (the third largest city in China) in fostering investment and trade promotional activities; represented an international firm seeking market entry into China; worked with a multinational food company in seven countries of the Middle East and North Africa to eliminate barriers to trade; established a major initiative for the Egyptian Minister of Trade to increase trade and investment; and created a five-year strategic plan for an international telecommunications company, focusing on eight priority markets in the Middle East and North Africa.  Ms. Barnett performed capably in these and other engagements, and client surveys document a high degree of satisfaction with her work.

7.  In addition to her work in international trade, Ms. Barnett made other significant contributions to PA's Transportation Practice, and to other practice groups, included representing a large airline client seeking landing rights in the United States, assisting with obtaining a government contract for an international aviation conference in China, and securing a contract with the U.S. Department of State.  She was always eager to collaborate with her colleagues in

PA, and marketed for and with other practice groups in Cairo, Tunisia, the United Arab Emirates and the United States.

8. Ms. Barnett served as a Managing Consultant for PA, which is the level immediately below that of Partner. At PA, Partners are much more highly compensated than other professional employees, among other things receiving significantly higher bonuses and more generous stock option packages. Ms. Barnett's career ambition was to become a Partner with PA, but only five of the firm's 179 partners are women.

9. Some 30 professionals worked within the Transportation Practice, and Ms. Barnett accounted for between 12 and 15 percent of Practice revenues. Throughout 2003 her utilization -- i.e., the percentage of her time for which PA collected revenue – ranged between 55 and 60 percent, twice the Practice average.

10. Ms. Barnett appeared in the media on numerous occasions while working for PA, including CNN, BBC, Financial Times, The Jerusalem Post, The Washington Post, and several Chinese periodicals. She always insisted that stories about her also feature PA, and as a result the firm received publicity that was both positive and free.

11. In light of Ms. Barnett's achievements, James Miller, the Senior Partner who headed the Transportation Practice, described her performance for the first half of 2003 as "very good!" and gave her the highest numerical rating of any Managing Consultant in the Practice. In addition, Mr. Miller wrote on Ms. Barnett's evaluation that she was "making progress to partner level," and he agreed to recommend her for an extraordinary bonus in October 2003.

<u>Ms. Barnett's Firing</u>

12. On October 17, 2003, Mr. Miller sent Ms. Barnett a letter saying that PA's Transportation Practice was being merged into its Information Technology Practice and that

3

several positions, including hers, were being eliminated due to a reduction in force. She was terminated effective November 14, 2003.

13. At the time of Ms. Barnett's termination, she had generated more revenue in 2003 than any member of the Transportation Practice save one, a younger man who was not terminated and who produced just $4,000 more than Ms. Barnett.

14. Before the reduction in force that accompanied Ms. Barnett's termination, nine of the 50 employees in the Transportation Practice were women. Seven of the nine women were terminated during the reduction in force, leaving just one female consultant.

15. The reduction in force also fell harshly on older employees. PA terminated the three oldest Managing Consultants in the Transportation Practice, as well as the oldest Principal Consultant, which is the level immediately below Managing Consultant.

16. These terminations of women and older employees were not correlated with performance. For example, the Managing Consultants who were terminated included not only Ms. Barnett, who ranked second in the Transportation Practice in revenue production, but also the third highest ranking revenue producer, who was the oldest Managing Consultant in the Practice. Ms. Barnett easily outdistanced many of the men whom PA allowed to remain with the firm, in terms of revenue production, utilization and marketing.

17. Since its founding, PA has accorded preference to younger men, as documented in the materials given new employees. As noted above, PA has virtually excluded women from the ranks of Partner: of 179 Partners, only five are female.

Damages

18. PA's actions as described herein have caused Ms. Barnett monetary and non-monetary loss. Monetary damage includes loss of base pay, bonuses and PA stock, as well as the

4

opportunity to become a Partner at PA. In addition, the firing itself was wounding to Ms. Barnett and has caused her pain and suffering.

19. PA's actions as described herein were malicious, willful, wanton and in reckless disregard of Ms. Barnett's rights.

## COUNT ONE
## DISCRIMINATION BASED ON SEX

20. Paragraphs 1-19 are realleged.

21. The actions of PA as described herein constituted discrimination based on sex, in violation of the District of Columbia Human Rights Act, D.C. Code § 2-1402.11.

## COUNT TWO
## DISCRIMINATION BASED ON AGE IN VIOLATION OF THE DCHRA

22. Paragraphs 1-19 are realleged.

23. The actions of PA as described herein constituted discrimination based on age, in violation of the District of Columbia Human Rights Act, D.C. Code § 2-1402.11.

## COUNT THREE
## DISCRIMINATION BASED ON AGE IN VIOLATION OF THE ADEA

24. Paragraphs 1-19 are realleged.

25. All prerequisites for bringing a civil action under the Age Discrimination in Employment Act have been satisfied.

26. The actions of PA as described herein constituted discrimination based on age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623(a).

## RELIEF

Plaintiff requests that this Court award her:

1) reinstatement in the position that she would have held in the absence of discrimination;

2) compensatory damages in an amount to be proved at trial, including compensation for past and future financial loss;

3) liquidated damages under the ADEA in an amount equal to lost compensation;

4) punitive damages in an amount to be proved at trial;

5) reasonable attorneys' fees and expenses;

6) prejudgment interest on all monetary sums awarded;

7) such other relief as the Court deems just.

## JURY DEMAND

Plaintiff requests trial by jury as to all issues in this case.

Richard A. Salzman 422497
Douglas B. Huron  89326
HELLER, HURON, CHERTKOF
LERNER, SIMON & SALZMAN
1730 M Street, NW
Suite 412
Washington, DC  20036
(202) 293-8090

Attorneys for plaintiff

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

JUDITH BARNETT                              )
                                            )
                    Plaintiff,              )
                                            )
            v.                              )   Civil Action No. 04-2576
                                            )
PA CONSULTING GROUP, INC.                   )   Calendar 10
                                            )   Judge Boasberg
                    Defendant.              )

## ORDER

Plaintiff is granted leave to file the amended complaint previously lodged with the Clerk.

The amended complaint shall be deemed filed on the date lodged.  Defendant shall have 20 days

from the date of this Order to answer or otherwise plead.

Date: _____                    _____
                                      ASSOCIATE JUDGE

cc:

Douglas B. Huron 89326
Richard A. Salzman 422497
HELLER, HURON, CHERTKOF
LERNER, SIMON & SALZMAN
1730 M Street, NW
Suite 412
Washington, DC  20036
(202) 293-8090
Attorneys for Plaintiff

Elizabeth A. Lalik
Chekisha A. Mitchell
Pillsbury Winthrop LLP
1600 Tysons Boulevard
McLean, VA 22102
Attorneys for Defendant

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

JUDITH BARNETT )
)
               Plaintiff, )
)
            v. ) Civil Action No. 04-2576
)
PA CONSULTING GROUP, INC. ) Calendar 10
) Judge Boasberg
               Defendant. )

## PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

Plaintiff, Judith Barnett, hereby responds to defendant's First Set of Interrogatories as follows:

### INTERROGATORY NO. 1:

Please identify each and every person whom Plaintiff believes may have knowledge, information or facts relevant to the claims and defenses asserted in this action, describing in detail the information each person possesses, including but not limited to each person with knowledge or information concerning your alleged damages. For each person identified, please state whether Plaintiff intends to call him or her as a witness at the trial of this action.

If Plaintiff is presently unable to provide a complete response to this interrogatory, please respond as fully as possible at this time and supplement this response at such time as additional responsive information becomes known to Plaintiff.

### ANSWER:

Plaintiff has not yet determined whom she will call as witnesses at trial, apart from plaintiff herself. Plaintiff believes that the following individuals may have knowledge relevant to her claims:

James Miller, Partner, PA Consulting Group (hereinafter "PA"): As Plaintiff's supervisor, Mr. Miller was responsible for approving her work and business plans, numerous

30452393v2

decisions on client development and client work, her evaluations, and most other supervisory responsibilities for Plaintiff's activities during her tenure at PA. He is fully aware that Plaintiff was an exceptional performer who was one of the most productive members of her work group and deserved to become a partner, and that younger and male employees with inferior performance records were retained over Plaintiff during the RIF. Mr. Miller told Plaintiff that the decision to RIF her was not his, and that it was made by Patrick Kelly and others at a higher level. Mr. Miller was aware that the RIF fell more harshly on women and on older employees, and that seven of the nine women working in the Transportation group were terminated and that the three oldest employees in the group were terminated.

Patrick Kelly: Mr. Kelly is the Partner in charge of the IT Practice, and was directly involved in the decision to terminate Plaintiff's employment (and the employment of the other women and older employees let go during the October 2003 RIF). He was fully aware that Plaintiff was an exceptional performer who was one of the most productive members of her work group, and that younger and male employees with inferior performance records were retained. He also knows that seven of the nine women working in the Transportation group were terminated, and that the three oldest employees in the group were terminated during the RIF

Jon Moynihan, Executive Chairman, PA: As the former Chief Operating Officer and current Chairman of PA, Mr. Moynihan, along with his Board of Directors, has been responsible for many years for overall direction in the corporation and directed the policies, planning and organization, compensation, and implementation of work and activities in PA. Mr. Moynihan was ultimately responsible for personnel policies and decisions. Mr. Moynihan is fully aware that PA has had a history of favoring male employees over female employees, and has a

reluctance to making women partners. Plaintiff contends that he participated in or condoned the discriminatory conduct here.

Bruce Tinsdale: Mr. Tinsdale was Chief Executive Officer of PA during Plaintiff's tenure and had responsibility for personnel and work policies and decisions. Mr. Tinsdale is fully aware that PA has had a history of favoring male employees over female employees, and a reluctance to making women partners, and Plaintiff contends that he participated in or condoned the discriminatory conduct here.

Michael O'Higgins:  Mr. O'Higgins was the transition point person for the Transportation Group when Hagler Bailly was acquired by PA, effective October 2000. Mr.O'Higgins is knowledgeable about the personnel and salary decisions made for the Group during much of 2000-2003.

Ken Rubin:  Mr. Rubin, a PA partner and the head of PA in the Americas, who had worked with plaintiff since their days at Hagler Bailly.  He spoke to plaintiff on her last day at PA and told her that he was surprised that she had been terminated, that he and others in PA had enjoyed working with her, and that "ironically" the partners were going to be taking diversity/discrimination training on the day she was leaving.

Annette Wigton:  Director of Personnel for the United States. Ms. Wigton is knowledgeable about personnel matters and decisions, and had spoken to Ms. Barnett about claims in this lawsuit from about 2001 until the Plaintiff's RIF; she also knows that, due to the processes that defendant took and neglected to take during the RIF, plaintiff was deprived of benefits as a result of the RIF, including profit sharing.

3

30452393v2

Ed Pinto:  Mr. Pinto was another older employee within the Transportation Group who was terminated notwithstanding his long tenure and strong performance, and thereby treated worse than lower performing younger employees.

Cathy McEnerney:  Ms. McEnerney is former Corporate Counsel for PA in the United States. She was knowledgeable about personnel, issues of discrimination, and legal actions during her tenure in PA.

Betsy Marcotte: Ms. Marcotte was a Managing Consultant at PA, and former Vice President of Hagler Bailly. She was treated less favorably than several similarly situated male employees who transitioned over to PA from Hagler Bailly, including the title/position she was given.  She also attended PA's Regional Conference for the Americas in Williamsburg, Virginia in October 2002.

Anita Mosner:  Ms. Mosner raised concerns about sex discrimination in connection with the treatment she received upon her transition over to PA from Hagler Bailly, including in the pay and position she was given in comparison to similarly situated men.

Kerry Burke: Former PA Consultant who worked closely with and traveled on work assignments with Plaintiff.  Ms. Burke also raised concerns with plaintiff about sexual harassment and questionable practices in the Transportation Group workplace that she had been subjected to by a male coworker, and plaintiff informed Mr. Miller about those concerns.  Ms. Burke currently works in the office of the Governor of Georgia.

Plaintiff also contends that most of the other employees in the Transportation Group knew about her performance and achievements for PA.  Several of her coworkers, including Michael Fleming, George Novak and Kevin Scherr expressed how surprised they were that

Plaintiff was terminated during the RIF, in light of her performance for the Transportation Group.

### INTERROGATORY NO. 2:

Please identify every person Plaintiff will or may call as an expert witness at the trial of this action, and, for each such person, please state (a) the grounds for qualifying such person as an expert witness in this case, including in your response, his or her field of expertise, education, experience, the exact title of any articles or publications written by or relied upon by the expert relating to this field of expertise or the subject matters of the experts' proposed testimony, (stating the date, publisher and location thereof); (b) the subject matter on which he or she is expected to testify in this case, identify all documents and materials of any kind provided to, created by or reviewed by the expert, the substance of the facts and opinions to which the expert is expected to testify, and state in complete detail the grounds for each opinion; (c) a complete description of all cases in which each expert has previously served as an expert addressing issues of a similar nature to those raised in this case, including a detailed description of his/her opinion and/or testimony and separately identify all documents authored or received by him/her in connection with each case containing or pertaining to his/her opinions or analysis of any issues in the case.

**ANSWER:**  Plaintiff has not yet determined whether she will retain an expert witness, but will respond in accordance with the scheduling order and local rules if she does.

### INTERROGATORY NO. 3:

Identify each and every person from whom Plaintiff or her attorney has obtained a statement (written, recorded or otherwise) concerning any act, circumstance or event related to Plaintiff's claims in this case and for each such person describe the statement in detail by type of statement, date of statement, substance of statement, custodian of statement and custodian's address and telephone number.

**ANSWER:**  Plaintiff objects to this request as the term "statement" is undefined and if broadly construed, could pertain to every comment ever made to Plaintiff about her accomplishments, assignments and performance with defendant.  Without waiving this objection, and subject to Plaintiff's understanding of the term, Plaintiff responds that she has not to date

obtained any written declaration or statement (sworn or otherwise) from a potential witness in this case.

## INTERROGATORY NO. 4:

Identify and fully describe each admission or statement against interest by Defendant, if any, upon which Plaintiff intends to rely in this action, including the substance of each admission or statement against interest, the identity of the person making the admission or statement, the person receiving the admission or statement, and identify any document or oral communication relating to such admission in any way.

**ANSWER:** Plaintiff objects to this request as vague and burdensome, as it could be interpreted as requiring Plaintiff to respond with reference to virtually every comment made by any agent or employee of defendant concerning her accomplishments, assignments and performance with defendant. Without waiving this objection and subject to Plaintiff's understanding of the request, she responds as follows:

Jim Miller repeatedly praised Plaintiff for her performance and productivity, told her that she was performing exceptionally well and that she was on track for partnership, but that she was being held back by the performance of the Transportation Group overall. He also told her that her performance during 2003 in particular was deserving of an "extraordinary bonus." Defendant is referred to all of the statements in Mr. Miller's October 10, 2003 memorandum, as well as his earlier evaluations of her performance. He also told Plaintiff that the decision to terminate her was not his, and that it was made by Patrick Kelly and others at a higher level. See also Plaintiff's response to interrogatory no. 1, for statements made by others.

Defendant's productivity, time card and revenue records, and Transport Dashboards reveal that Plaintiff was one of the top performers in her practice group and outperforming

30452393v2

several younger and male employees who were not terminated during the RIF. The same records also show that other female and older employees were disadvantaged during the RIF.

Defendant's internal records reflect the favoritism shown to male and younger employees. Defendant's "New Member Welcome Pack" contains a document called "PA's Early History" that refers to certain "critical" principles established early in PA's formation, including that: "young men should be given responsibility at an early age: young men were more vigorous and more adventurous; Old men must leave consultancy at the latest by age 60" and "The ideal recruit to PA was: young -- say 28 . . . of high but not brilliant intelligence. . . Jews and Catholics were not engaged, nor were members of Christian sects."

Defendant's Client Satisfaction Surveys reveal a high degree of satisfaction among Plaintiff's clients.

Defendant's records regarding partners reveal that, as of the time of the events in question, out of 179 Partners, only five were female.

Annette Wigton's October 22, 2003 memorandum to Plaintiff reveals the ages of employees terminated during the RIF.

The hiring documents given to Plaintiff, including her contract, make statements regarding the terms and conditions and benefits of her employment, and thereby reflect in part the damages that she has suffered, and also state that she was to receive service credit for her service with Hagler Bailly, Inc.

Defendant's US Employee Handbook is replete with statements regarding the employment policies and benefits governing the employment relationship.

7

## INTERROGATORY NO. 5:

With respect to the prayer for relief in Plaintiff's Complaint, itemize all the damages and other relief Plaintiff is seeking and the manner in which such amounts were computed or calculated, including any claims for compensatory damages, punitive damages, attorneys' fees, and costs, and any other type of monetary relief Plaintiff seeks. Please include an explanation for why each amount is necessary or appropriate, and include all reductions for mitigation, disability or unavailability for work and alternative employment, and a copy of each such computation or calculation.

**ANSWER:** Plaintiff objects to this request to the extent it seeks information at this juncture regarding the attorney fee relationship that Plaintiff has with her counsel. Plaintiff will provide such information upon a finding that she is the prevailing party in this litigation, and therefore entitled to fees. At this time, the request seeks information that is privileged, and it is irrelevant and burdensome. As to the remaining discovery request, Plaintiff responds as follows:

1. Declaratory and injunctive relief: Plaintiff seeks a declaration that she was the victim of age and sex discrimination by PA, and injunction prohibiting PA from engaging in further acts of discrimination and reprisal.

2. Compensatory damages: Plaintiff seeks compensatory damages to compensate her for the out of pocket losses she has suffered, as well as the humiliation and anger that she experienced from defendant's unlawful conduct.

With respect to out of pocket losses, plaintiff seeks compensation for the financial loss that she has suffered and will continue to suffer throughout her career, as a result of being deprived of the opportunity to work for and become a partner with PA. Employment with PA, and especially partnership, is very lucrative and defendant's decision to fire Plaintiff because of her sex and/or age has caused severe economic harm. Plaintiff was earning a base salary of $175,000 at the time of her termination. Plaintiff anticipates paying herself a salary of $108,000

8

this year from self-employment. Thus, she expects her lost salary, when using her salary at the time of termination and her salary this year as the benchmarks, to be in the range of $65,000-$70,000, per year. However, when comparing her salary to the salary she would have earned, if she made partner with PA, the loss is considerably higher. Plaintiff will obtain more precise information in discovery regarding the value of partnership and the income that Plaintiff could reasonably have expected to earn as a PA partner in discovery, and will supplement this response.

Plaintiff also experienced out of pocket losses stemming from the loss of her employer sponsored health insurance; plaintiff now is required to pay in excess of $400 per month for health insurance, whereas previously her premiums were nominal ($25 per month). Plaintiff also lost profit sharing for 2003 and the opportunity to participate in the 401k program. Finally, plaintiff was required to borrow $5,000 from a home equity loan to meet certain expenses because of the loss of salary she experienced from the termination.

In addition, plaintiff experienced feelings of anger, humiliation and anxiety from the sudden discharge and discrimination. Plaintiff had anticipated working for PA throughout the remainder of her career, and enjoying the benefits of PA employment, including its retirement program. After being summarily fired, Plaintiff was faced with the unnerving prospect of having to start her own business at the age of 57, with no retirement plan. Plaintiff has been forced to sell off securities that she was relying on in order to pursue her self employment and meet her current obligations. Plaintiff is not contending that the discrimination caused her any permanent or long-lasting emotional injury, and she objects to Defendant's request for medical information as an unwarranted invasion of personal privacy, irrelevant and overly burdensome.

9

3. Punitive damages:  Plaintiff seeks punitive damages in an amount to be determined by the jury to punish defendant for its unlawful and malicious conduct.

4. Attorneys' fees and expenses:  As noted above, if Plaintiff prevails in this action, she will provide detailed information about the costs she has incurred, including reasonable attorneys' fees, in accordance with the local rules.

## INTERROGATORY NO. 6:

Describe in detail every effort or contact made by Plaintiff to secure employment (including self-employment or work as an independent contractor) or income from sources other than Defendant from May 1, 2003 to the present, whether or not initiated by Plaintiff.  Such description should include the potential or actual employer, contractor or customer's name and address, the nature of the business, the date or dates on which the contact, effort or attempt was made, who initiated it, the manner in which Plaintiff applied or made contact, whether the employer, contractor, or customer interviewed Plaintiff, the substance of any correspondence or communication, the type of position or business opportunity, the dates and the substance of all meetings or communications, the terms and conditions of any offer of employment or business proposal, and whether Plaintiff accepted or declined any offers of employment or business opportunity and if so, why.

**ANSWER:**  Plaintiff did not receive income from any source other than defendant before her termination.  Plaintiff has continued to work for Mars incorporated, Dubai, United Arab Emirates since her discharge.  She had worked for Mars Master Foods Middle East during her my entire consulting career (July 1999 to the present), and she continues to do trade work for the Company in the Middle East region.  To date, she has been paid $98,250 gross, for her services rendered or in advance for future services.

Plaintiff has also worked for Qorvis Communications, Embassy of Saudi Arabia. In January 2004, she participated in a Council on Foreign Relations mission to attend the Jeddah Economic Summit in Jeddah, Saudi Arabia and wrote an article in the Washington Post on her experience there.  She was contacted in early February 2004 by Qorvis Communications to

10

30452393v2

create and implement a Women's Initiative between the U.S. and Saudi. Term is May 2004 to May 2005. This is a one-year contract and is in the amount of $81,000.

Plaintiff has also performed work for PhRMA: She was contacted by PhRMA, the trade/industry association for pharmaceutical companies, in Washington in December 2003, to do a project for the industry in Iraq. The term of this project was from May 12 to June 30, 2004. This six week contract is in the amount of $ 25,000.

Plaintiff has also sought work with Energizer Battery, Inc: After a trip to Dubai, planned before she was told of her RIF departure, Plaintiff had planned a trip to meet with various US-based international companies based in Dubai. The only two that had any interest were Energizer Battery and Bose Entertainment Systems, but they did not hire Plaintiff.

## INTERROGATORY NO. 7:

Describe any employment or self-employment (including services for any family business), other than Defendant that Plaintiff has had from May 1, 2003, to and including the present, providing complete information for each employer, customer or business for whom she has worked in any capacity, whether as an employee, independent contractor, commissioned agent or in any other capacity, including but not limited to the employer's, customer's or business entity's name and address, the nature of its business, the date she was hired or began work, the date of and reason(s) for termination, the nature and title of her position held and the duties performed by her, her rate of pay, her total income, her direct supervisors and, in the case of self-employment, a description of the dates, nature of the work, and the total amount and source of all income.

**ANSWER:**  Plaintiff did not receive income from any source other than defendant before her termination.  See response to Interrogatory No. 6, above.

## INTERROGATORY NO. 8:

Please state, in chronological order, all income of any kind received by Plaintiff during the period from May 1, 2003, to and including the present, from any source other than Defendant, and all fringe benefits to which she has been entitled, including, but not limited to, any wages or earnings, unemployment compensation, social security disability benefits, or workers' compensation benefits, including the value or amount of each fringe benefit (e.g. the

30452393v2

policy limitation of insurance plans or the monthly contribution to a pension plan), and identify the full address of all sources of such income or benefits and the dates of receipt.

**ANSWER:** Plaintiff did not receive income from any source other than defendant before her termination. See Plaintiff's response to Interrogatory No. 6.

## INTERROGATORY NO. 9:

Describe all non-monetary relief Plaintiff seeks and state the factual and legal basis for Plaintiff's contention that such relief is necessary or appropriate.

**ANSWER:** See Plaintiff's response to Interrogatory no. 5. The legal basis for the relief is the DCHRA. See Daka Inc. v. McCrae, 839 A.2d 682, 695-96 (D.C. 2003).

## INTERROGATORY NO. 10:

Given that Plaintiff claims damages for "pain and suffering," describe Plaintiff's medical history in detail, including every illness, injury, disorder, abnormal or disabling condition (physical, mental or emotional) or medical procedures and all treatment Plaintiff has had at any time (other than common virus, cold, flu or routine dental work), the date on which such condition began or became evident, the diagnosis of any such condition, all treatment received and the dates thereof, the identities of all current or former physicians, therapists, dentists, psychologists, hospitals, clinics, sanitariums and other health care providers who diagnosed or treated Plaintiff for each such physical, emotional, mental, or psychological condition, and identify (or produce) all documents evidencing or relating to diagnosis or treatment of such conditions.

**ANSWER** Plaintiff is not contending that the discrimination caused her any permanent or long-lasting emotional injury, and she objects to Defendant's request for medical information as an unwarranted invasion of personal privacy, irrelevant and overly burdensome.

## INTERROGATORY NO. 11:

Identify all exhibits Plaintiff intends to use at trial of this action. If Plaintiff is presently unable to provide a complete response to this interrogatory, please respond as fully as possible at this time and supplement this response at such time as additional exhibits become known to Plaintiff.

12

**ANSWER:** Discovery in this case has barely begun. Defendant has not yet had occasion to produce any documents, or responses to interrogatories, and no depositions have been taken. At this time, Plaintiff does not know what documents she will use at trial as exhibits. She does however, anticipate using the following documents currently in her possession:

PA records demonstrating her performance in revenue generation, utilization and billing as compared to other members of her work group;

Performance appraisals and memoranda written by her supervisor reflecting her outstanding performance;

Defendant's Client Satisfaction Surveys reveal a high degree of satisfaction among Plaintiff's clients;

Defendant's personnel policies and procedures;

Documents relating to Plaintiff's hiring by PA, including her contract and correspondence relating to her contract;

Materials written by PA which directly reflect the firm's historical preference for young men, such as "PA's Early History."

**INTERROGATORY NO. 12:**

Please identify any person who has provided any information upon which Plaintiff's answers to these Interrogatories are based and describe the information each such person has provided.

**ANSWER:** None, other than Plaintiff.

**INTERROGATORY NO. 13:**

Please state whether you have ever been arrested, incarcerated or convicted of a crime, and, if so, describe in detail all situations or events which have led to or involved your arrest,

30452393v2

incarceration, or conviction for any reason whatsoever, including the date, time and location of such arrest, incarceration, or conviction, provide the arresting officer's full name, position and law enforcement organization; and describe in detail the situation or event leading to your arrest, incarceration or conviction, the eventual disposition of the matter, and any penalty imposed.

**ANSWER:** Plaintiff objects to this request as burdensome and irrelevant.

Notwithstanding these objections, Plaintiff responds as follows:

No.

## INTERROGATORY NO. 14:

Identify every lawsuit or administrative proceeding in which you have been involved, whether as a charging party, complainant, respondent, Plaintiff, defendant or witness, by providing the exact name and number for each case, the court or agency in which it is or was pending, the nature of the dispute, the capacity in which you were involved, and the outcome.

**ANSWER:** Other than the current proceeding, Plaintiff was involved in one other legal action; her divorce, in 1976, Vogel vs. Vogel, Montgomery County Court, Maryland.

## INTERROGATORY NO. 15

Identify each and every document requested to be produced in Defendant's First Request for Production of Documents which Plaintiff is withholding on the basis of any objection or privilege, stating specifically the basis for withholding each such document.

**ANSWER:** See documents produced.

## INTERROGATORY NO. 16:

Please describe Plaintiff's employment history during the fifteen years prior to being employed by Defendant, including, as to each position, an identification of the employer, Plaintiff's position at the time of termination, and Plaintiff's last supervisor.

14

**ANSWER:** From 1989 to 1991, Plaintiff was employed with the law firm of Cooter & Gell, Of Counsel, her supervisor was Larry Schwartz (deceased).  From 1991 to 1993, she worked for Pillsbury, Madison & Sutro, as an associate.  Her supervisor was Deanne Siemer.  From 1993 to 1998, she worked for the U.S. Department of Commerce, as Deputy Assistant Secretary.  Her supervisors were Jeffrey Garten and Stuart Eizenstat.  From 1998 to November 2003, she worked for Georgetown Global Investments Group (GKMG).  GKMG later merged with Hagler Bailly, which was later merged with PA.

## INTERROGATORY NO. 17:

Please fully describe any and all fee arrangements, whether based upon a set hourly rate or  contingent in nature, established between Plaintiff and her counsel in this matter.  If such arrangement is pursuant to a set hourly rate, please provide that hourly rate.

**ANSWER:** Plaintiff objects to this request at this time.  See response to Interrogatory no. 5, above.

Douglas B. Huron 89326
Richard A. Salzman 422497
HELLER, HURON, CHERTKOF
LERNER, SIMON & SALZMAN
1730 M Street, NW
Suite 412
Washington, DC  20036
(202) 293-8090

Attorneys for plaintiff

15

30452393v2

Verification

I hereby verify under the penalties of perjury that the foregoing interrogatory answers are true to the best of my knowledge, information and belief.

Date: _7/7/04_

_Judith Barnett_
Judith Barnett

Certificate of Service

I certify that a copy of the foregoing was served by mail on July 13, 2004 upon:

Elizabeth A. Lalik
Chekisha A. Mitchell
Pillsbury Winthrop LLP
1600 Tysons Boulevard
McLean, VA 22102

_Richard A. Salzman_
Richard A. Salzman

16

30452393v2

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | | |
|---|---|---|
| JUDITH BARNETT | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-2576 |
| | ) | |
| PA CONSULTING GROUP, INC. | ) | Calendar 10 |
| | ) | Judge Boasberg |
| Defendant. | ) | |

## PLAINTIFF'S FIRST DISCOVERY REQUESTS

Plaintiff, Judith Barnett, hereby submits the following interrogatories and requests for

production of documents upon defendant PA Consulting Group, Inc.  Defendant should answer

or respond to undersigned counsel within 30 days of receipt of these requests.  These requests are

to be considered continuing in character.  If, after answering, new or different information comes

to the attention of defendant, it is under a continuing duty to supplement or amend the answers

previously made.

## INSTRUCTIONS

A.  As used herein, the word "identify" when used with respect to a natural person

requires defendant to provide the person's full name; job title; sex; age and current or last known

business and residential address and current or last known business and residential telephone

number.

B. If any interrogatory cannot be answered in full, defendant should answer to the extent possible, specifying the reason for its inability to answer the remainder and stating whatever information, knowledge or belief it may have with respect to the unanswered portion.

C. This interrogatory seeks all information known or available to defendant, whether the information is possessed directly by defendant or by any of its agents, servants, employees, subordinates, representatives or, unless privileged, by one of its attorneys.

D. If any information or document is withheld from defendant's answer or response on grounds of any privilege or objection, defendant shall describe in full the nature of the information or document withheld and provide a detailed explanation of the basis for any claim of privilege or objection.

E. The term "document" as used in these requests embraces all documents within defendant's possession, custody or control, or the possession, custody or control of any of their agents, attorneys or officers, including any writing whether typed, printed or handwritten, of whatever kind and in whatever form, and specifically includes e-mails, cc-mail, electronic records and/or any other form of computer generated communication. The term also includes any video or audio tape recording and any transcript of such recording, any computer medium containing information convertible into a written document and any transcription of such computer medium. A copy of a document on which any notations have been made is to be considered a separate document.

## INTERROGATORIES

1. Fully describe PA's corporate status (i.e., professional corporation, limited liability corporation, partnership), including its relationship with any other entity (whether in the United States or abroad), including all parent and/or subsidiary entities. For each such entity, state the

number of employees who work for the entity and identify all directors and/or officers of each such entity.

2. Identify each person who was employed within PA's Transportation Practice at any time since January 1, 2000, specifying each such person's date of birth, sex, date of hire (and if appropriate, termination date), title, and yearly salary.

3. Identify each person who has been employed within PA's Information Technology Practice since January 1, 2000, specifying each such person's date of birth, sex, date of hire (and if appropriate, termination date), title, and yearly salary.

4. As of January 1 for each year since 2000, specify the total number of PA partners (or any other term PA uses to signify a partner) worldwide and in the United States, and the number of female partners worldwide and in the United States.

5. Identify each person who, at any time since January 1, 2000, has been a partner (or any other term PA uses to signify a partner) with PA, specifying each such person's date of birth, sex, date he or she became a partner, area of practice and total yearly compensation.

6. Identify each woman who has ever been a partner with PA.

7. Identify each individual who participated in any way in the decision to abolish Plaintiff's job and/or terminate her employment with defendant. Specify the date each such person made any recommendation, consultation and/or decision, and <u>fully</u> describe his or her role.

8. Fully describe the criteria that were used in order to determine which employees to separate during the 2003 reorganization/reduction in force.

9. Identify each PA employee whose job was abolished since January 1, 2000, due to a reduction in force and/or reorganization, specifying each such person's date of birth, sex, date of

hire, termination date, title, and yearly salary. For each such person identified, state whether he or she was separated from employment, and whether he or she was offered any position with PA subsequent to the abolition of his or her job.

10. For each year since 2000, state the total yearly revenue generated by each person working within PA's Transportation Group.

11. For each year since 2000, state the total yearly billable hours and/or utilization rate for each person working within PA's Transportation Group.

12. Identify each PA employee who, since January 1, 2000, has filed any kind of complaint with any court of law, or any governmental organization (including but not limited to the Equal Employment Opportunity Commission, the D.C. Office of Human Rights, or any other state or local entity responsible for enforcing civil rights laws) alleging sex and/or age discrimination. For each such person identified state:

    a. the date and nature of the complaint (i.e., sex or age discrimination or both);

    b. the alleged responsible (or discriminating) official[s] identified at issue in the complaint;

    c. where the complaint was filed/prosecuted;

    d. the disposition of the complaint.

13. Identify each PA employee who, since January 1, 2000, has filed any kind of formal complaint with PA alleging sex and/or age discrimination. For each such person identified state:

    a. the date and nature of the complaint;

    b. the alleged responsible (or discriminating or retaliating) official[s] identified at issue in the complaint;

    c. whether an investigation was done, and if so, by whom;

d.  the disposition of the complaint.

14.  If defendant contends that plaintiff's conduct or job performance was in any way deficient or in need of improvement, state in detail the nature and specifics of the deficiency(ies), and identify each person knowledgeable of any fact supporting such a deficiency.

15.  Identify each employee who has assumed any of the duties that had previously been performed by plaintiff.

16.  Identify (as that term is defined above) each person whom defendant knows or believes to have knowledge relevant to or supporting the claims, denials, defenses, assertions, or other facts or alleged facts set forth in defendant's Answer.  For each such person identified, state in detail the information he or she is believed to possess.

17.  State defendant's current net worth.

## DOCUMENT REQUESTS

1.  Produce a copy of each document that evidences, refers to or reflects plaintiff's termination of employment and/or the recommendation and/or decision to abolish her job, including but not limited to each document that pertains to the reasons for the abolishment of her job.

2.  Produce a copy of each document that evidences, refers to or reflects any PA corporate reorganization and/or reduction in force during 2003, including but not limited to any reorganization/merger of the Transportation Practice and/or the Information Technology Practice, and the factors or criteria used to implement the reduction in force.

3. Produce a copy of plaintiff's personnel file, including but not limited to all documents that describe her position, compensation, performance and/or conduct as a PA employee, and any signed agreements with PA.

4. Produce a copy of the personnel files, including but not limited to all documents that describe the employee's position, compensation, performance and/or conduct as a PA employee, and any signed agreements, for each person working in the Transportation Group during 2003.

5. Produce a copy of the personnel files, including but not limited to all documents that describe the employee's position, compensation, performance and/or conduct as a PA employee, and any signed agreements, for each person who has been terminated via reduction in force (or reorganization) since January 1, 2003.

6. Produce a copy of each document that describes PA's corporate history, including but not limited to "PA's Early History," Issue 1979/1980 and any subsequent version or iteration of this document.

7. Produce a copy of each Timecard Revenue report, or any other document, report or compilation of data, which evidences, refers to or reflects the revenue generated by any person working in defendant's Transportation Practice, from January 1, 2000 to December 31, 2003.

8. Produce a copy of each document, report or compilation of data, which evidences, refers to or reflects the billable hours and/or utilization rate of any person in defendant's Transportation Practice, from January 1, 2000 to December 31, 2003.

9. Produce a copy of each document, including but not limited to e-mails, and/or other computer generated messages, handwritten notes, and/or any other document, written by or to any of the following persons since January 1, 2003, which mentions or pertains to plaintiff,

and/or her separation from employment, and/or her complaint of sex discrimination and/or age discrimination:

      a. Jim Miller;

      b. Jon Moynihan;

      c. Bruce Tinsdale;

      d. Patrick Kelly;

      e. Ken Rubin;

Defendant is specifically requested to contact each person on this list who is currently affiliated with PA to search his or her e-mail and to ask for all documents that may be responsive to this request.

10. For each year since January 1, 2000, produce a copy of each "Client Satisfaction Survey" pertaining to the work of any person within the Transportation Practice.

11. For each person working within the Transportation Practice since January 1, 2000, produce a copy of each such person's "Annual Downward Appraisal" for each year.

12. For each person working within the Transportation Practice since January 1, 2000, produce a copy of each such person's Personal Profile.

13. Produce a copy of each Employee Handbook, and/or any other document which describes the personnel policies and/or benefits of employees working for PA, which has been in effect since January 1, 2000.

14. Produce a copy of each document which evidences, refers to or reflects, any policy and/or procedure regarding reductions in force, reorganizations and/or termination of employment, in effect since January 1, 2000.

15.  Produce a copy of each document which evidences, refers to or reflects any information responsive to interrogatory 12 above.

16.  Produce a copy of each document which evidences, refers to or reflects any information responsive to interrogatory 13 above.

17.  Produce a copy of each document which evidences, refers to or reflects any information responsive to interrogatory 14 above.

18.  Produce a complete copy of defendant's tax returns from January 1, 2000 to the present.

19.  Produce a copy of defendant's most recent Financial Statement, or any other document that evidences, refers to or reflects defendant's current net worth.

20.  Produce a copy of each signed statement regarding plaintiff and/or her claims at issue in this case.

21.  Produce a copy of each document provided to and/or received from the United States Equal Employment Opportunity Commission and/or D.C. Office of Human Rights that pertains in any way to plaintiff and/or her claims of discrimination.

22. Produce a copy of each document that evidences, refers to or reflects the claims or defenses in this case which has not otherwise been produced in response to the requests set forth above.

Douglas B. Huron 89326
Richard A. Salzman 422497
HELLER, HURON, CHERTKOF
LERNER, SIMON & SALZMAN
1730 M Street, NW
Suite 412
Washington, DC  20036
(202) 293-8090

Attorneys for plaintiff

Certificate of Service

I certify that a copy of the foregoing was served by mail on June 29, 2004 upon:

Elizabeth A. Lalik
Chekisha A. Mitchell
Pillsbury Winthrop LLP
1600 Tysons Boulevard
McLean, VA 22102

Richard A. Salzman

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| JUDITH BARNETT | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 04-2576 |
| | ) |
| PA CONSULTING GROUP, INC. | ) Calendar 10 |
| | ) Judge Boasberg |
| Defendant. | ) |

## CERTIFICATE REGARDING DISCOVERY

I hereby certify that on June 29, 2004 I served on counsel for defendant Plaintiff's

First Discovery Requests, and I will retain the original of these documents in my

possession, without alteration, until the case is concluded in this Court, the time for

noting an appeal has expired, and any appeal has been noted.

Richard A. Salzman 422497
HELLER, HURON, CHERTKOF
LERNER, SIMON & SALZMAN
1730 M Street, N.W.
Suite 412
Washington, DC 20036
(202) 293-8090
Attorneys for plaintiff

<u>Certificate of Service</u>

I certify that a copy of the foregoing was served by mail on June 29, 2004 upon:

Elizabeth A. Lalik
Chekisha A. Mitchell
Pillsbury Winthrop LLP
1600 Tysons Boulevard
McLean, VA 22102

_____
Richard A. Salzman

# Superior Court of the District of Columbia

5/26/04

500 Indiana Ave N.W
Washington, D.C. 20001

230

The civil action case captioned at the
right has been RESCHEDULED for a
SETTLEMENT/SCHEDULING conference
before Civil Calendar #10
Judge Boasberg
for the date and time shown.

CASE NUMBER:   04ca002576
Barnett, J. vs PA Consulting Group


HEARING DATE:   7/16/04 TIME: 10:00am


TO:
04ca002576  D001A PRU.0298b2J
Elizabeth A. Lalik, Esq.
1600 Tysons Blvd
McLean VA
22102

PLEASE REPORT TO:
 COURTROOM #49    Bld. A, 2nd Fl.
 515 5th ST.,     NW
Civil Assignment Office, Phone:  (202) 879-1750
PLEASE BRING THIS NOTICE WITH YOU WHEN YOU APPEAR.

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

| | | |
|---|---|---|
| JUDITH BARNETT, | ) | |
| 4373 Embassy Park Drive, N.W. | ) | |
| Washington, D.C. 20016, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No: 04-0002576 |
| | ) | |
| v. | ) | |
| | ) | |
| PA CONSULTING GROUP, INC., | ) | Calendar #10 |
| 1750 Pennsylvania Avenue, N.W. | ) | |
| Suite 1000 | ) | |
| Washington, D.C. 20006, | ) | May 17, 2004 |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S FIRST REQUESTS FOR
## PRODUCTION OF DOCUMENTS TO PLAINTIFF

Defendant PA Consulting Group, Inc. ("Defendant" or "PA"), hereby requests, pursuant

to Rule 34 of the Civil Rules of the Superior Court of the District of Columbia, that Plaintiff

Judith Barnett ("Plaintiff") produce and permit Defendant to inspect and copy the documents

hereinafter described, within thirty days (30) days of service of this request. Defendant requests

that the documents be made available for inspection by mailing the documents to the office of

counsel for Defendant, Elizabeth A. Lalik, Pillsbury Winthrop LLP, 1600 Tysons Boulevard,

Mclean, Virginia 22102.

Objection will be made at the time of hearing to any attempt to introduce evidence which

is sought by these discovery requests and which is not disclosed in response hereto.

## DEFINITIONS

A.      "Plaintiff" means Judith Barnett and all persons acting or purporting to act on her

behalf, including counsel.

30452510v2

B.     "Defendant" means PA Consulting Group, Inc. ("PA") its present and former officers, directors, agents, employees and all other persons acting or purporting to act on its behalf.

C.     The term "Complaint" shall refer to the Complaint filed by Plaintiff in the above-captioned matter.

D.     "Including" means all documents which comprise or constitute a complete and accurate response to the request, regardless of whether or not a particular document or type of document is specifically identified in the request.

E.     "Document" or "documents" means, without limitation, any written, recorded, filmed or graphic matter, whether produced, reproduced or on paper, cards, tape (whether audio, video, electronic or otherwise), film, electronic facsimile, computer storage device or any other media, including, but not limited to, e-mail, memoranda, notes, minutes, records, photographs, correspondence, computer disks, hard drives, tapes, telegrams, diaries, rolodex cards, logs, bookkeeping entries, financial statements, tax returns, checks, check stubs, reports, studies, charts, graphs, statements, handwritten notes, applications, agreements, books, pamphlets, periodicals, appointment calendars, records or recordings of oral conversations, work papers and also including, but not limited to, originals and all copies which are different in any way from the original, whether by interlineation, receipt stamp notation, indication of copies sent or received or otherwise, and drafts, which are in the possession, custody, or control of the Plaintiff, her present or former agents, representatives or attorneys or any and all persons acting on her behalf, including documents at any time in the possession, custody, or control of such individuals or entities as known by Plaintiff to exist.

30452510v2

## INSTRUCTIONS

A.     The documents shall be organized and labeled to correspond with the numbered paragraphs and sub-paragraphs of the Request.

B.     With respect to any objection you make, and with respect to any information you withhold under any claim of privilege, please provide the nature of the privilege (including work product) which is being claimed as well as the following information:

(1)     for documents: (a) the type of document (e.g., letter or memorandum); (b) the general subject matter of the document; (c) the date of the document; and (d) such other information as is sufficient to identify the document for a subpoena *duces tecum*, including, where appropriate, the author of the document, the addressees of the document, and any other recipients shown in the document, and, where not apparent, the relationship of the author, addressees, and recipients to each other;

(2)     for oral communications: (a) the name of the person making the oral communication and the names of the persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making the communication; (b) the date and place of the communication; and (c) the general subject matter of the communication.

30452510v2

## DOCUMENTS REQUESTED

1.      Any and all documents concerning, or containing information about, Plaintiff's employment with Defendant, Hagler Bailly, Inc., or Georgetown Global Investment Corporation, including, but not limited to, all documents received by Plaintiff during her employment with those entities relating to her performance, her practice, her pay, and her conduct.

2.      Any and all documents which support: (a) the factual allegations giving rise to Plaintiff's claims against Defendant, or (b) Plaintiff's claims for damages.

3.      Any and all correspondence, communications (or documents relating thereto), statements, affidavits or testimony, sworn or unsworn, made by Plaintiff concerning the facts giving rise to her claims against Defendant or the subject matter of this litigation.

4.      Any and all correspondence, communications (or documents relating thereto), statements, affidavits or testimony, sworn or unsworn, made by persons other than Plaintiff or her counsel concerning the facts giving rise to her claims against Defendant or the subject matter of this litigation.

5.      Any and all documents, including documents authored by Plaintiff, or by any other current or former employee of Defendant, which in any way: (a) served, in whole or in part, as a basis for Plaintiff's claims against Defendant, or (b) support Plaintiff's claims.

6.      Any and all documents demonstrating the "accomplishments" Plaintiff lists in paragraph 4 of her Complaint.

7.      Any and all documents relating to or evidencing the projects Plaintiff lists in paragraph 6 of her Complaint.

4

8.      Any and all documents supporting or showing Plaintiff's allegation in paragraph 6 of her Complaint that she "performed capably in these and other engagements, and client surveys document a high degree of satisfaction with her work."

9.      Any and all documents relating to or evidencing the "contributions" and/or marketing Plaintiff lists and describes in paragraph 7 of her Complaint.

10.     Any and all documents supporting the pay, bonus, stock option, and or demographic allegations Plaintiff makes in paragraph 8 of her Complaint.

11.     Any and all documents supporting or evidencing the revenue and/or utilization allegations Plaintiff makes in paragraph 9 of her Complaint.

12.     Any and all documents supporting or evidencing the "appearances" Plaintiff alleges in paragraph 10 of her Complaint and/or the allegations she makes in that paragraph that she "insisted" PA be featured.

13.     Any and all documents supporting the allegations in paragraph 11 of Plaintiff's Complaint that Mr. Miller gave Plaintiff the "highest" numerical rating and/or recommended her for an "extraordinary bonus."

14.     Any and all documents supporting the revenue allegations Plaintiff makes in paragraphs 13 and 16 of her Complaint, and/or the demographic allegations Plaintiff makes in paragraph 14 of her Complaint.

15.     Any and all documents reflecting "preference" Plaintiff describes in paragraph 17 of her Complaint.

16.     Any and all documents which tend to:  (a) refute or rebut Plaintiff's claims; or (b) support PA's defenses.

30452510v2

17.     Any and all notes, diaries, logs, personal or business calendars, personal or business organizers, or other documents created or kept by Plaintiff concerning or documenting her employment with Defendant.

18.     Any and all documents that Plaintiff has submitted to, or received from, any local, state or federal government agency, including but not limited to the Equal Employment Opportunity Commission and any state or local equal opportunity agency, regarding any charge, claim, complaint or allegation of unlawful conduct, including but not limited to administrative charges Plaintiff filed or made against Defendant, or any other individual or employer, and all investigative files of any such agency received by or in the custody or control of Plaintiff as defined herein.

19.     Any and all documents relating to, or otherwise showing or constituting any act or omission by Defendant, including its agents and employees, in violation of the District of Columbia Human Rights Act, D.C. Code §§2-1401.01 et seq., or any other employment discrimination law, or federal or state law.

20.     Any and all documents reflecting or relating to Plaintiff's efforts and attempts to secure employment, business, or income from May 1, 2003, to and including the present, including all correspondence, phone messages, notes, resumes, e-mails, applications, letters of application, responses to applications or solicitations, offers of employment or business opportunities, acceptances and letters or other documentation of rejection.

21.     Any and all documents relating to any employment or occupation Plaintiff has had, of any kind, from May 1, 2003, to and including the present, excluding Defendant, but including any other employment, business enterprise, self-employment or employment as an

6

independent contractor, consultant or commissioned agent, and including personnel records, performance evaluations, progress reports, disciplinary records and supervisors' comments.

22.     Any and all documents pertaining to the compensation or income (including stock options and benefits) earned or received by Plaintiff from any employer, government agency, customer, business entity, proprietor or owner, excluding Defendant, or any other source, including self-employment, from May 1, 2003, to and including the present, and including Plaintiff's federal and state income tax returns, W-2 forms, bank receipts, payroll check stubs, workers' compensation documents, social security disability documents, unemployment compensation documents, insurance payments, invoices, 1099 forms, and deposit slips.

23.     Any and all documents referring to, showing, or constituting any fringe benefits offered to or received by Plaintiff or otherwise available to her through any employment or offer of employment during or with respect to the period from May 1, 2003, to and including the present, except from Defendant, including, but not limited to, stock options, life insurance, medical insurance, hospitalization insurance and pension or profit-sharing benefits.

24.     Any and all documents referring to Plaintiff's job performance as an employee of any of her present or former employers, other than Defendant, including all documents relating in any way to, or showing or constituting evaluations, reviews, discipline or counseling Plaintiff received as an employee of, or relating to her termination or resignation from, those present or former employers.

25.     Any and all documents supporting, indicating or documenting the amount of damages Plaintiff seeks, or which contain calculations of the amount of damages, or other monetary relief Plaintiff seeks arising from her allegations against Defendant.

7

26.     Given that Plaintiff is seeking damages for emotional injury and/or "pain and suffering," any and all medical records and other documents, including, but not limited to, reports, office notes, evaluations, diagnoses, dental records, prescription forms, bills, letters to employers, and intake forms, reflecting or relating to the physical, mental, emotional or psychological health or condition and treatment of the Plaintiff, whether such documents are presently in Plaintiff's possession, custody or control, or in the possession, custody or control of her current or former physicians, therapists, dentists, psychologists, counselors, hospitals, clinics, sanitariums, and other health care providers and insurers or other indemnitors, excluding medical records relating solely to minor orthopedic conditions, common childhood illnesses, common virus, cold, flu or routine dental work.

27.     Any and all recordings (including transcripts thereof) of any conversation, whether telephonic or otherwise, upon which Plaintiff relies to support any of her allegations against Defendant.

28.     Any and all recordings (including transcripts thereof) of any conversation, whether telephonic or otherwise, between Plaintiff or anyone acting on her behalf, and any current or former employee or agent of Defendant.

29.     Any and all photographs upon which Plaintiff relies to support any of her allegations against Defendant.

30.     Any and all documents upon which Plaintiff relied, in any way, to respond to Defendant's First Set of Interrogatories.

31.     All correspondence, memoranda, letters, notes, e-mails or other documents which passed between Plaintiff and Defendant which relate or refer in any way to claims or issues relating to Plaintiff's claims of discrimination.

32.     All correspondence, memoranda, letters, notes, e-mails or other documents which passed between Plaintiff and any other individual which relate or refer in any way to claims or issues relating to Plaintiff's claims of discrimination.

33.     All documents demonstrating that Plaintiff reported any alleged discrimination to any manager, employee or agent of Defendant.

34.     All documents and/or property in Plaintiff's possession that are the property of Defendant.

35.     All documents prepared by (including all drafts), relied upon by, and/or exchanged with each expert witness that Plaintiff will call or expects to call to testify at the trial of this case.

Dated this 17th day of May 2004.

PA CONSULTING GROUP, INC.

By: _____
                Counsel

Elizabeth A. Lalik (#447052)
Chekisha A. Mitchell (#477374)
PILLSBURY WINTHROP LLP
1600 Tysons Boulevard
Mclean, Virginia 22102
Phone: (703) 905-2000
Fax:     (703) 905-2500

*Counsel for Defendant, PA*
*Consulting Group, Inc.*

9

30452510v2

## Certificate of Service

I certify that on this 17th day of May 2004, a true copy of the foregoing Defendant's First Set of Interrogatories to Plaintiff was sent by U.S. Mail, postage pre-paid, to:

Richard A. Salzman, Esq.
HELLER, HURON, CHERTKOF,
LERNER, SIMON & SALZMAN
1730 M Street, NW Suite 412
Washington, DC 20036
(202) 293-8090

*Counsel for Plaintiff*

10

30452510v2

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

|  |  |
|---|---|
| JUDITH BARNETT,<br>4373 Embassy Park Drive, N.W.<br>Washington, D.C. 20016,<br><br>                    Plaintiff,<br><br>      v.<br><br>PA CONSULTING GROUP, INC.,<br>1750 Pennsylvania Avenue, N.W.<br>Suite 1000<br>Washington, D.C. 20006,<br><br>                    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No: 04-0002576<br><br>    Calendar #10<br><br>    May 17, 2004 |

## <u>DEFENDANT'S FIRST SET OF INTERROGATORIES TO PLAINTIFF</u>

Defendant PA Consulting Group, Inc. ("Defendant" or "PA") hereby requests, pursuant to Rule 33 of the Civil Rules of the Superior Court of the District of Columbia, that Plaintiff answer the following interrogatories separately and fully, in writing and under oath, within thirty (30) days from the date of service hereof.  Answers to Interrogatories should be served by delivery to counsel for Defendant, Elizabeth A. Lalik, Pillsbury Winthrop LLP, 1600 Tysons Boulevard, Mclean, Virginia 22102.

Objection will be made at the time of trial or hearing to any attempt to introduce evidence which is sought by these discovery requests and which is not disclosed in response hereto.

## <u>DEFINITIONS</u>

A.    "Plaintiff" means Judith Barnett and all persons acting or purporting to act on her behalf.

B.    "Defendant" means Defendant PA Consulting Group, Inc. ("PA"), its present and former officers, directors, agents, and employees.

30452393v2

C.    The term "Complaint" shall refer to the Complaint filed by the Plaintiff in the above-captioned matter.

D.    "Document" or "documents" means, without limitation, any written, recorded, filmed or graphic matter, whether produced, reproduced or on paper, cards, tape (whether audio, video, electronic or otherwise), film, electronic facsimile, computer storage device or any other media, including, but not limited to, e-mail, memoranda, notes, minutes, records, photographs, correspondence, computer disks, hard drives, tapes, telegrams, diaries, rolodex cards, logs, bookkeeping entries, financial statements, tax returns, checks, check stubs, reports, studies, charts, graphs, statements, handwritten notes, applications, agreements, books, pamphlets, periodicals, appointment calendars, records or recordings of oral conversations, work papers and also including, but not limited to, originals and all copies which are different in any way from the original, whether by interlineation, receipt stamp notation, indication of copies sent or received or otherwise, and drafts, which are in the possession, custody, or control of the Plaintiff, her present or former agents, representatives or attorneys or any and all persons acting on her behalf, including documents at any time in the possession, custody, or control of such individuals or entities as known by Plaintiff to exist.

E.    "Including" means all documents which comprise or constitute a complete and accurate response to the request, regardless of whether or not a particular document or type of document is specifically identified in the request.

F.    "Communication" means any contact or act by which information or knowledge is transmitted or conveyed between or among two or more persons, including, without limitation, written contact by such means as notes, letters, e-mail, memoranda, telegrams or facsimile and/or all face-to-face meetings and telephone conversations.

2

30452393v2

G.    "Concerning" means referring, relating, reflecting or pertaining, directly or indirectly, in any way, to all or any part of a specified subject matter or document.

H.    The term "person" or "persons" shall include individuals, associations, partnerships, corporations, and any other type of entity or institution whether formed for business purposes or any other purpose.

I.    To "Describe in Detail" means to give a complete and full description concerning the matter about which the inquiry is made, including the full name, address, and telephone number of persons involved, if appropriate, along with details of the events and communications, including dates, times, places, amounts, and other particulars that make the answer to the Interrogatory complete and meaningful.

J.    To "Identify" when used in reference to a natural person means to state the person's name, residence and business address and residence and business phone numbers.

K.    To "Identify" a "document" means to provide the following information irrespective of whether the document is deemed privileged or subject to any claim of privilege:

(1)    The title or other means of identification of each such document;

(2)    The date of each such document;

(3)    The author of each such document;

(4)    The recipient or recipients of each such document; including but not limited to Plaintiff or anyone who purports to represent the Plaintiff;

(5)    The present location of any and all copies of each such document in the care, custody, or control of Plaintiff;

(6)    The names and current addresses of any and all persons who have custody and control of each such document or copies; thereof; and

3

(7)     If all copies of the document have been destroyed, the names and current addresses of the person or persons authorizing the destruction of the document and the date the document was destroyed.

L.     In lieu of "Identifying" any document, it shall be deemed a sufficient compliance with these Interrogatories to attach a copy of each such document to the answers hereto and reference said document in the Interrogatory to which the document is responsive.

M.     To "Identify" a person that is a business, organization or group of persons means to state the full name and mailing address of such business, organization or group of persons, the form of the business, organization, or group of persons (e.g., government agency, corporation, partnership, joint venture, etc.), and to "Identify" the natural person who would have knowledge of the information sought by the Interrogatory.

N.     To "Identify" an oral communication means,

1)     to state the date and place of the communication;

2)     to identify each person who participated in or otherwise heard the communication;

3)     to describe as specifically as possible what was said by each participant in the course of such communication;

4)     to state whether there are any documents which set forth, summarize, or refer to any portion of such oral communication;

5)     if such documents exist, to identify each such document and each person having possession, custody, or control of the document.

4

30452393v2

## INSTRUCTIONS

1.      In answering these Interrogatories, Plaintiff is requested to furnish all information, however obtained, including hearsay, that is known by or available to her.

2.      In answering these Interrogatories, Plaintiff is requested to identify separately, and in a manner suitable for use in a subpoena, all sources of information (whether human, documentary, or other) and all records maintained by or in the possession, custody or control of Plaintiff or her agents, or any other person on which the Plaintiff relies in answering these Interrogatories.  In the alternative, where such sources of information are documents as defined above, Plaintiff is requested to produce all such documents.

3.      Should a privilege be asserted with respect to any part of any discussion, document, or other communication concerning information requested by any of the following Interrogatories, Plaintiff is requested to answer the Interrogatories in the manner indicated above, and identify what information is claimed to be privileged and state the nature of the privilege claimed and the facts upon which such claim is based in sufficient detail to permit the Court to adjudicate the validity of the claim.

4.      These Interrogatories shall be deemed to be continuing in nature within the meaning of Rule 26(f) of the Civil Rules of the Superior Court of the District of Columbia so that you shall be obligated to serve amended or additional answers should different or more current information come to your attention.

30452393v2

## INTERROGATORIES

### INTERROGATORY NO. 1:

Please identify each and every person whom Plaintiff believes may have knowledge, information or facts relevant to the claims and defenses asserted in this action, describing in detail the information each person possesses, including but not limited to each person with knowledge or information concerning your alleged damages. For each person identified, please state whether Plaintiff intends to call him or her as a witness at the trial of this action.

If Plaintiff is presently unable to provide a complete response to this interrogatory, please respond as fully as possible at this time and supplement this response at such time as additional responsive information becomes known to Plaintiff.

### ANSWER:

30452393v2

## INTERROGATORY NO. 2:

Please identify every person Plaintiff will or may call as an expert witness at the trial of this action, and, for each such person, please state (a) the grounds for qualifying such person as an expert witness in this case, including in your response, his or her field of expertise, education, experience, the exact title of any articles or publications written by or relied upon by the expert relating to this field of expertise or the subject matters of the experts' proposed testimony, (stating the date, publisher and location thereof); (b) the subject matter on which he or she is expected to testify in this case, identify all documents and materials of any kind provided to, created by or reviewed by the expert, the substance of the facts and opinions to which the expert is expected to testify, and state in complete detail the grounds for each opinion; (c) a complete description of all cases in which each expert has previously served as an expert addressing issues of a similar nature to those raised in this case, including a detailed description of his/her opinion and/or testimony and separately identify all documents authored or received by him/her in connection with each case containing or pertaining to his/her opinions or analysis of any issues in the case.

## ANSWER:

7

**INTERROGATORY NO. 3:**

Identify each and every person from whom Plaintiff or her attorney has obtained a statement (written, recorded or otherwise) concerning any act, circumstance or event related to Plaintiff's claims in this case and for each such person describe the statement in detail by type of statement, date of statement, substance of statement, custodian of statement and custodian's address and telephone number.

**ANSWER:**

8

## INTERROGATORY NO. 4:

Identify and fully describe each admission or statement against interest by Defendant, if any, upon which Plaintiff intends to rely in this action, including the substance of each admission or statement against interest, the identity of the person making the admission or statement, the person receiving the admission or statement, and identify any document or oral communication relating to such admission in any way.

## ANSWER:

9

**INTERROGATORY NO. 5:**

With respect to the prayer for relief in Plaintiff's Complaint, itemize all the damages and other relief Plaintiff is seeking and the manner in which such amounts were computed or calculated, including any claims for compensatory damages, punitive damages, attorneys' fees, and costs, and any other type of monetary relief Plaintiff seeks. Please include an explanation for why each amount is necessary or appropriate, and include all reductions for mitigation, disability or unavailability for work and alternative employment, and a copy of each such computation or calculation.

**ANSWER:**

10

**INTERROGATORY NO. 6:**

Describe in detail every effort or contact made by Plaintiff to secure employment (including self-employment or work as an independent contractor) or income from sources other than Defendant from May 1, 2003 to the present, whether or not initiated by Plaintiff. Such description should include the potential or actual employer, contractor or customer's name and address, the nature of the business, the date or dates on which the contact, effort or attempt was made, who initiated it, the manner in which Plaintiff applied or made contact, whether the employer, contractor, or customer interviewed Plaintiff, the substance of any correspondence or communication, the type of position or business opportunity, the dates and the substance of all meetings or communications, the terms and conditions of any offer of employment or business proposal, and whether Plaintiff accepted or declined any offers of employment or business opportunity and if so, why.

**ANSWER:**

11

30452393v2

## INTERROGATORY NO. 7:

Describe any employment or self-employment (including services for any family business), other than Defendant that Plaintiff has had from May 1, 2003, to and including the present, providing complete information for each employer, customer or business for whom she has worked in any capacity, whether as an employee, independent contractor, commissioned agent or in any other capacity, including but not limited to the employer's, customer's or business entity's name and address, the nature of its business, the date she was hired or began work, the date of and reason(s) for termination, the nature and title of her position held and the duties performed by her, her rate of pay, her total income, her direct supervisors and, in the case of self-employment, a description of the dates, nature of the work, and the total amount and source of all income.

## ANSWER:

**INTERROGATORY NO. 8:**

Please state, in chronological order, all income of any kind received by Plaintiff during the period from May 1, 2003, to and including the present, from any source other than Defendant, and all fringe benefits to which she has been entitled, including, but not limited to, any wages or earnings, unemployment compensation, social security disability benefits, or workers' compensation benefits, including the value or amount of each fringe benefit (e.g. the policy limitation of insurance plans or the monthly contribution to a pension plan), and identify the full address of all sources of such income or benefits and the dates of receipt.

**ANSWER:**

30452393v2

## INTERROGATORY NO. 9:

Describe all non-monetary relief Plaintiff seeks and state the factual and legal basis for Plaintiff's contention that such relief is necessary or appropriate.

## ANSWER:

14

**INTERROGATORY NO. 10:**

Given that Plaintiff claims damages for "pain and suffering," describe Plaintiff's medical history in detail, including every illness, injury, disorder, abnormal or disabling condition (physical, mental or emotional) or medical procedures and all treatment Plaintiff has had at any time (other than common virus, cold, flu or routine dental work), the date on which such condition began or became evident, the diagnosis of any such condition, all treatment received and the dates thereof, the identities of all current or former physicians, therapists, dentists, psychologists, hospitals, clinics, sanitariums and other health care providers who diagnosed or treated Plaintiff for each such physical, emotional, mental, or psychological condition, and identify (or produce) all documents evidencing or relating to diagnosis or treatment of such conditions.

**ANSWER:**

15

30452393v2

## INTERROGATORY NO. 11:

Identify all exhibits Plaintiff intends to use at trial of this action. If Plaintiff is presently unable to provide a complete response to this interrogatory, please respond as fully as possible at this time and supplement this response at such time as additional exhibits become known to Plaintiff.

## ANSWER:

30452393v2

## INTERROGATORY NO. 12:

Please identify any person who has provided any information upon which Plaintiff's answers to these Interrogatories are based and describe the information each such person has provided.

## ANSWER:

30452393v2

**INTERROGATORY NO. 13:**

Please state whether you have ever been arrested, incarcerated or convicted of a crime, and, if so, describe in detail all situations or events which have led to or involved your arrest, incarceration, or conviction for any reason whatsoever, including the date, time and location of such arrest, incarceration, or conviction, provide the arresting officer's full name, position and law enforcement organization; and describe in detail the situation or event leading to your arrest, incarceration or conviction, the eventual disposition of the matter, and any penalty imposed.

**ANSWER:**

18

## INTERROGATORY NO. 14:

Identify every lawsuit or administrative proceeding in which you have been involved, whether as a charging party, complainant, respondent, plaintiff, defendant or witness, by providing the exact name and number for each case, the court or agency in which it is or was pending, the nature of the dispute, the capacity in which you were involved, and the outcome.

## ANSWER:

19

## INTERROGATORY NO. 15

Identify each and every document requested to be produced in Defendant's First Request for Production of Documents which Plaintiff is withholding on the basis of any objection or privilege, stating specifically the basis for withholding each such document.

## ANSWER:

30452393v2

## INTERROGATORY NO. 16:

Please describe Plaintiff's employment history during the fifteen years prior to being employed by Defendant, including, as to each position, an identification of the employer, Plaintiff's position at the time of termination, and Plaintiff's last supervisor.

## ANSWER:

21

**INTERROGATORY NO. 17:**

Please fully describe any and all fee arrangements, whether based upon a set hourly rate or contingent in nature, established between Plaintiff and her counsel in this matter. If such arrangement is pursuant to a set hourly rate, please provide that hourly rate.

**ANSWER:**

30452393v2

Dated this 17th day of May 2004.

PA CONSULTING GROUP, INC.

By: _____
                    Counsel

Elizabeth A. Lalik (#447052)
Chekisha A. Mitchell (#477374)
PILLSBURY WINTHROP LLP
1600 Tysons Boulevard
Mclean, Virginia 22102
Phone: (703) 905-2000
Fax:    (703) 905-2500

*Counsel for Defendant, PA
Consulting Group, Inc.*

## Certificate of Service

I certify that on this 17th day of May 2004, a true copy of the foregoing Defendant's First Set of Interrogatories to Plaintiff was sent by U.S. Mail, postage pre-paid, to:

Richard A. Salzman, Esq.
HELLER, HURON, CHERTKOF,
LERNER, SIMON & SALZMAN
1730 M Street, NW Suite 412
Washington, DC 20036
(202) 293-8090

*Counsel for Plaintiff*

_____

30452393v2

RECEIVED
Civil Clerk's Office

MAY 0 7 2004

Superior Court of the
District of Columbia
Washington, D.C.

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

JUDITH BARNETT,                                )
4373 Embassy Park Drive, N.W.                  )
Washington, D.C. 20016,                        )
                                               )
                            Plaintiff,         )    Civil Action No: 04-0002576
                                               )
              v.                               )
                                               )    Calendar #10
PA CONSULTING GROUP, INC.,                     )
1750 Pennsylvania Avenue, N.W.                 )
Suite 1000                                     )    Judge James E. Boasberg
Washington, D.C. 20006,                        )
                                               )
                            Defendant.         )

## DEFENDANT'S ANSWER AND DEFENSES TO PLAINTIFF'S COMPLAINT

Defendant PA Consulting Group, Inc. ("Defendant" or "PA"), by and through its

attorneys, for its Answer and Defenses to Plaintiff's Complaint hereby states as follows:

### ANSWER

### Jurisdiction

1.      PA admits that Plaintiff purports to bring this action under the District of

Columbia Human Rights Act, D.C. Code §§2-1401.01 et seq., but denies the existence of any

grounds for relief against it under that statute and specifically denies Plaintiff's allegation that

PA terminated her because of her sex and age.  The remaining jurisdictional allegations

contained in paragraph 1 of the Complaint state legal conclusions to which no response is

required at this time.  However, PA denies that the facts of this case support the exercise of any

jurisdiction over this matter.

<u>Parties</u>

2.       Upon information and belief, PA admits that Plaintiff is aged 57 and a citizen of the United States.  PA admits the remaining allegations contained in paragraph 2 of the Complaint.

3.       PA admits that it is a consulting firm that does business in many countries, as well as in Washington, D.C.  Whether PA is an employer as defined in D.C. Code §2-1401.02(10) is a legal question to which no response is required at this time, but PA denies the existence of any grounds for relief against PA under the District of Columbia Human Rights Act.  PA denies each and every other allegation contained in paragraph 3 of the Complaint.

4.       PA lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 4 of the Complaint, and therefore denies them.

5.       PA admits that Plaintiff worked for a consulting firm which was acquired by PA around October 2000 and that the former firm's Transportation Practice, in which Plaintiff worked, served as the initial basis for PA's Transportation Practice.  That practice was headquartered in Washington, D.C.  PA further admits that Plaintiff worked in PA's Transportation Practice following the acquisition.  PA is without information sufficient to form a belief as to the truth of the other details alleged in paragraph 5 of the Complaint regarding Plaintiff's work history prior to PA, and therefore denies them.  PA denies each and every other allegation contained in paragraph 5 of the Complaint.

6.       PA is without information sufficient to form a belief as to the truth of the allegations contained in paragraph 6 of the Complaint regarding Plaintiff's work with her other firm, and therefore denies them.  As to the allegations contained in paragraph 6 of the Complaint regarding Plaintiff's work with PA, while PA admits that Plaintiff's work focused on

2

international trade generally, PA denies each and every one of those specific allegations as alleged.

7.   PA denies each and every allegation contained in paragraph 7 of the Complaint as alleged.

8.   PA admits that Plaintiff served as a Managing Consultant for PA.  PA further admits that generally speaking Partners are a level up on the corporate hierarchy from Managing Consultant.  PA is without information sufficient to form a belief as to the truth of the allegation regarding Plaintiff's career ambitions, and therefore denies that allegation.  PA denies each and every other allegation contained in paragraph 8 of the Complaint.

9.   PA denies each and every allegation contained in paragraph 9 of the Complaint.

10.   PA admits that Plaintiff had contact with the media during her employment at PA, but PA denies each and every other allegation contained in paragraph 10 of the Complaint.

11.   PA admits that James Miller rated Plaintiff's performance as "very good" on Plaintiff's Half Year Appraisal for 2003, that Mr. Miller noted on Plaintiff's Half Year Appraisal that she was making progress to partner level, and that Plaintiff received a numerical rating of "3" on a scale of 1 to 4 on that appraisal.  PA denies each and every other allegation contained in paragraph 11 of the Complaint.

12.   PA admits that Mr. Miller sent Plaintiff a letter (on or about October 17, 2003) stating that PA's Transportation Practice was being merged into the Information Technology practice, that PA was implementing a reduction in force, and that Plaintiff's position would be affected.  PA admits that Plaintiff was terminated effective November 14, 2003.  PA denies each and every other allegation contained in paragraph 12 of the Complaint.

13.   PA denies each and every allegation contained in paragraph 13 of the Complaint.

3

30451471v4

14.   PA denies each and every allegation contained in paragraph 14 of the Complaint.

15.   PA denies each and every allegation contained in paragraph 15 of the Complaint.

16.   PA denies each and every allegation contained in paragraph 16 of the Complaint.

17.   PA denies each and every allegation contained in paragraph 17 of the Complaint.

<u>Damages</u>

18.   PA denies each and every allegation contained in paragraph 18 of the Complaint.

19.   PA denies each and every allegation contained in paragraph 19 of the Complaint.

## COUNT ONE
## (ALLEGED) DISCRIMINATION BASED ON SEX

20.   PA adopts and restates its answers to paragraphs 1 through 19 of the Complaint as its answer to paragraph 20 of the Complaint.

21.   PA denies each and every allegation contained in paragraph 21 of the Complaint.

## COUNT TWO
## (ALLEGED) DISCRIMINATION BASED ON AGE

22.   PA adopts and restates its answers to paragraphs 1 through 19 of the Complaint as its answer to paragraph 22 of the Complaint.

23.   PA denies each and every allegation contained in paragraph 23 of the Complaint.

## RELIEF

PA denies that Plaintiff is entitled to the relief requested in paragraphs 1) through 6) or to any other relief in this action.

## JURY DEMAND

PA admits that Plaintiff is entitled to a trial by jury with respect to the legal issues in this case, but denies that Plaintiff is entitled to a trial by jury on any equitable issue, including, but not limited to front pay, attorney's fees or costs.

4

30451471v4

## ADDITIONAL DEFENSES

### First Defense

Plaintiff has failed to state a claim against Defendant, in whole or in part, upon which relief can be granted.

### Second Defense

The relief requested is barred to the extent Plaintiff has failed to mitigate her damages by failing to seek or obtain other employment following the termination of her employment with Defendant.

### Third Defense

The Complaint should be dismissed because Plaintiff has failed to meet the requirements for a private right of action under §2-1403.16 of the D.C. Human Rights Act.

### Fourth Defense

Plaintiff's claims are barred by the doctrine of unclean hands.

### Fifth Defense

The Complaint should be dismissed on the grounds that Plaintiff failed to satisfy applicable filing requirements and procedural prerequisites to suit.

### Sixth Defense

All actions taken by Defendant concerning Plaintiff were taken in good faith, for legitimate business reasons unrelated to Plaintiff's gender or age, and were in no way malicious, egregious, in bad faith, or in willful or reckless disregard of any legal rights of Plaintiff.

### Seventh Defense

Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations.

### Eighth Defense

Some or all of Plaintiff's claims are barred because Plaintiff failed to exhaust her administrative remedies.

### Ninth Defense

Defendant denies all allegations of the Complaint not specifically admitted herein and reserves the right to assert additional defenses that may become relevant or apparent through the course of discovery or otherwise during the course of this litigation.

WHEREFORE, having fully answered, PA Consulting Group, Inc. respectfully requests that the Complaint against it be dismissed with prejudice, and that it be awarded its costs expended in the defense of this action, including reasonable attorney's fees.

Dated this 7th day of May 2004.

PA CONSULTING GROUP, INC.

By: _____
             Counsel

Elizabeth A. Lalik (#447052)
Chekisha A. Mitchell (#477374)
PILLSBURY WINTHROP LLP
1600 Tysons Boulevard
Mclean, Virginia 22102
Phone: (703) 905-2000
Fax:    (703) 905-2500

*Counsel for Defendant, PA
Consulting Group, Inc.*

30451471v4

## Certificate of Service

I certify that on this 7th day of May 2004, a true copy of the foregoing Answer and

Defenses to Plaintiff's Complaint was sent by facsimile and U.S. Mail, postage pre-paid, to:

Richard A. Salzman, Esq.
HELLER, HURON, CHERTKOF,
LERNER, SIMON & SALZMAN
1730 M Street, NW Suite 412
Washington, DC 20036
(202) 293-8090

*Counsel for Plaintiff*

7

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

JUDITH BARNETT,                              )
4373 Embassy Park Drive, N.W.                )
Washington, D.C. 20016,                      )
                                             )
                          Plaintiff,         )        Civil Action No: 04-0002576
                                             )
          v.                                 )
                                             )
PA CONSULTING GROUP, INC.,                   )
1750 Pennsylvania Avenue, N.W.               )
Suite 1000                                   )
Washington, D.C. 20006,                      )
                                             )
                          Defendant.         )

~~PROPOSED~~ ORDER                                   *and it may have*

                        *The Consent Motion of*
It is hereby ORDERED that Defendant PA Consulting Group, Inc. is granted until May 7,
                    ^

2004 in which to file its answer or other responsive pleading to Plaintiff's Complaint.

          It is further ORDERED that the Clerk shall mail a certified copy of this Order to all

counsel of record as shown below.

          SO ORDERED this __3rd__ day of _____*May*_____, 2004.

                        _____
                        Judge of the Superior Court of the District of Columbia  ~~DOCKETED~~  MAY

                              *James E. Boasberg*

Richard A. Salzman (#422497)            Elizabeth A. Lalik (#447052)
HELLER, HURON, CHERTKOF,                Chekisha A. Mitchell (#477374)
LERNER, SIMON & SALZMAN                 PILLSBURY WINTHROP LLP
1730 M Street, NW                       1600 Tysons Boulevard
Suite 412                               Mclean, Virginia 22102
Washington, DC 20036                    Phone: (703) 905-2192
(202) 293-8090                          Fax:    (703) 905-2500

*Counsel for Plaintiff, Judith Barnett*      *Counsel for Defendant, PA*
                                             *Consulting Group, Inc.*

30447359v1

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# DISMISSAL AND NOTICE OF RIGHTS

To: Ms. Judith Barnett

4373 Embassy Park Dr., N.W.

Washington, DC 20016

From:  U.S. Equal Employment Opportunity Commission

Washington Field Office

1400 L Street, N.W., Suite 200

Washington, D.C. 20005

[  ]  *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 100-2004-00420 | Janice Campbell, Supervisor | (202) 275-7377 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[  ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[  ]  Your allegations did not involve a disability that is covered by the Americans with Disabilities Act.

[  ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[  ]  We cannot investigate your charge because it was not filed within the time limit required by law.

[  ]  Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[  ]  While reasonable efforts were made to locate you, we were not able to do so.

[  ]  You had 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

[  ]  The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[  ]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[X]  Other *(briefly state)*   pending in Superior Court of the District of Columbia on the same allegations.

## – NOTICE OF SUIT RIGHTS –
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you.  You may pursue this matter further by bringing suit in federal or state court against the respondent(s) named in the charge. If you decide to sue, you must sue **WITHIN 90 DAYS** from your receipt of this Notice. Otherwise your right to sue based on the above-numbered charge will be lost.

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.  (If you file suit, please send a copy of your court complaint to this office.)

On behalf of the Commission

*Dana R. Hutter*

Dana Hutter, Acting Director

APR 2 8 2004

*(Date Mailed)*

Enclosure(s)
Information Sheet
cc
Elizabeth Lalik, Esq.
Pillsbury Winthrop, LLP
1   Tysons Boulevard
M  ean, VA 22102



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Washington Field Office

1400 L Street, N.W., Suite 200
Washington, D.C. 20005
(202) 275-7377
TTY (202) 275-7518
FAX (202) 275-6834 & 0025

**APR 2 8 2004**

Ms. Judith Barnett
4373 Embassy Park Dr., N.W.
Washington, DC 20016

EEOC Charge #: 100-2004-00420
Re: Judith Barnett  v. PA Consulting Group, Inc.

Dear Ms. Barnett:

It has been brought to the U.S. Equal Employment Opportunity Commission's (EEOC) attention that you have filed a lawsuit in the Superior Court for the District of Columbia.  Your lawsuit alleges the same factual allegations as in your charge of discrimination filed with the EEOC Washington Field Office.

Based on the above information and in accordance with *Kremer v. Chemical Construction Corporation, 456 U.S. 461 (1982),* The EEOC has determined to discontinue investigation of this charge.

Sincerely,

Tram H. Ngo
Investigator

Enclosure

cc: Elizabeth Lalik, Esq.
    Pillsbury Winthrop, LLP
    1600 Tysons Boulevard
    McLean, VA 22102

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

JUDITH BARNETT,                              )
4373 Embassy Park Drive, N.W.                )
Washington, D.C. 20016,                      )
                                             )
                          Plaintiff,         )        Civil Action No: 04-0002576
                                             )        *Cal #10*
              v.                             )
                                             )
PA CONSULTING GROUP, INC.,                   )
1750 Pennsylvania Avenue, N.W.               )
Suite 1000                                   )
Washington, D.C. 20006,                      )
                                             )
                          Defendant.         )

> RECEIVED
> Civil Clerk's Office
> APR 2 6 2004
> ...... Court of the
> ...... of Columbia
> Washington, D.C.

### CONSENT MOTION

Pursuant to Rule 12-I of the Civil Rules of the Superior Court of the District of Columbia, the Parties hereto, through their undersigned counsel, jointly move the Court for an Order granting the Defendant PA Consulting Group, Inc. until May 7, 2004 in which to file its answer or other responsive pleading to Plaintiff's Complaint, which was filed on April 1, 2004. All parties have consented to the relief sought.

Dated this 26th day of April, 2004.

*Richard A. Salzman (w/ permission - EAL)*
Richard A. Salzman (#422497)
HELLER, HURON, CHERTKOF,
LERNER, SIMON & SALZMAN
1730 M Street, NW
Suite 412
Washington, DC 20036
(202) 293-8090

*Counsel for Plaintiff, Judith Barnett*

Elizabeth A. Lalik (#447052)
Chekisha A. Mitchell (#477374)
PILLSBURY WINTHROP LLP
1600 Tysons Boulevard
Mclean, Virginia 22102
Phone: (703) 905-2192
Fax:    (703) 905-2500

*Counsel for Defendant, PA Consulting Group, Inc.*

30447359v2

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

|  |  |  |
|---|---|---|
| JUDITH BARNETT,<br>4373 Embassy Park Drive, N.W.<br>Washington, D.C. 20016, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No: 04-0002576 |
| v. | ) ) | |
| PA CONSULTING GROUP, INC.,<br>1750 Pennsylvania Avenue, N.W.<br>Suite 1000<br>Washington, D.C. 20006, | ) ) ) ) ) ) | |
| Defendant. | ) | |

## PROPOSED ORDER

It is hereby ORDERED that Defendant PA Consulting Group, Inc. is granted until May 7, 2004 in which to file its answer or other responsive pleading to Plaintiff's Complaint.

It is further ORDERED that the Clerk shall mail a certified copy of this Order to all counsel of record as shown below.

SO ORDERED this _____ day of _____, 2004.

_____
Judge of the Superior Court of the District of Columbia

Richard A. Salzman (#422497)
HELLER, HURON, CHERTKOF,
LERNER, SIMON & SALZMAN
1730 M Street, NW
Suite 412
Washington, DC 20036
(202) 293-8090

*Counsel for Plaintiff, Judith Barnett*

Elizabeth A. Lalik (#447052)
Chekisha A. Mitchell (#477374)
PILLSBURY WINTHROP LLP
1600 Tysons Boulevard
Mclean, Virginia 22102
Phone: (703) 905-2192
Fax:    (703) 905-2500

*Counsel for Defendant, PA
Consulting Group, Inc.*

30447359v2





**Superior Court of the District of Columbia**
**Civil Division**

Barnett, J. vs PA Consulting Group            C.A. No. <u>04ca002576</u>

## INITIAL ORDER

Pursuant to D.C. Code §11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case is assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order, and any General Order issued by the judge to whom the case is assigned. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to any defendant who has failed to so respond, a default and judgement will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients <u>prior</u> to the Conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Civil Assignment Office (202) 879-1750 may continue the Conference <u>once</u>, with the consent of all parties, to either of the two succeeding Fridays. Requests must be made not less than six business days before the scheduling conference date. No other continuance of the Conference will be granted except upon motion for good cause shown.

April 01, 2004           Chief Judge Rufus G. King, III

Case Assigned to:    Calendar <u>#10</u> <u>(Judge James E. Boasberg)</u>

Initial conference: @ 9:30am   07/02/04     Courtroom: 49, 2nd Floor
                                            515 5th Street N.W.
                                            Washington, D.C. 20001

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION



JUDITH BARNETT                            )
4373 Embassy Park Drive, NW               )
Washington, DC 20016                      )
                                          )
                        Plaintiff         )
                                          )
        v.                                )   Civil Action No. 00-003576
                                          )
PA CONSULTING GROUP, INC.                 )
1750 Pennsylvania Avenue, NW              )
Suite 1000                                )
Washington, DC 20006                      )
                                          )
                        Defendant.        )

## COMPLAINT FOR RELIEF FROM DISCRIMINATION IN EMPLOYMENT

### Jurisdiction

1. This is an action to remedy defendant's conduct in terminating plaintiff because of her sex and age, in violation of the District of Columbia Human Rights Act, D.C. Code §§ 2-1401.01 et seq. This Court has jurisdiction under D.C. Code §§ 2-1403.16 and 11-921.

### Parties

2. Plaintiff Judith Barnett is a woman aged 57. She is a citizen of the United States.

3. Defendant PA Consulting Group, Inc. (PA) is an international consulting firm doing business in Washington, D.C. PA is an employer as defined in D.C. Code § 2-1401.02(10).

### Ms. Barnett's Record of Accomplishment

4. Plaintiff Barnett has a distinguished background as a senior government official, international trade consultant, corporate lawyer and litigator, law professor, public affairs specialist and writer. She has written for popular outlets including, most recently, the January

Apr-06-04  10:32am    From-P,A, CONSULTING GROUP          2024422594          T-711   P.03      F-162

25, 2004 edition of the Outlook section of The Washington Post. Her focus has been on the international arena, and she served during the administration of President Clinton as a Deputy Assistant Secretary of Commerce and as the Principal DAS for Trade Development.

5. Following Ms. Barnett's service in the Clinton administration, she worked for a consulting firm which was acquired by defendant PA in October 2000. The former firm's Transportation Practice, where Ms. Barnett worked, became one of PA's practice areas, headquartered in Washington, D.C. Ms. Barnett remained with the Transportation Practice following the acquisition.

6. With both her former firm and PA, Ms. Barnett developed an active practice in international trade. While at PA, she represented the City of Tianjin (the third largest city in China) in fostering investment and trade promotional activities; represented an international firm seeking market entry into China; worked with a multinational food company in seven countries of the Middle East and North Africa to eliminate barriers to trade; established a major initiative for the Egyptian Minister of Trade to increase trade and investment; and created a five-year strategic plan for an international telecommunications company, focusing on eight priority markets in the Middle East and North Africa. Ms. Barnett performed capably in these and other engagements, and client surveys document a high degree of satisfaction with her work.

7. In addition to her work in international trade, Ms. Barnett made other significant contributions to PA's Transportation Practice, and to other practice groups, included representing a large airline client seeking landing rights in the United States, assisting with obtaining a government contract for an international aviation conference in China, and securing a contract with the U.S. Department of State. She was always eager to collaborate with her colleagues in

2

PA, and marketed for and with other practice groups in Cairo, Tunisia, the United Arab Emirates and the United States.

8. Ms. Barnett served as a Managing Consultant for PA, which is the level immediately below that of Partner. At PA, Partners are much more highly compensated than other professional employees, among other things receiving significantly higher bonuses and more generous stock option packages. Ms. Barnett's career ambition was to become a Partner with PA, but only five of the firm's 179 partners are women.

9. Some 30 professionals worked within the Transportation Practice, and Ms. Barnett accounted for between 12 and 15 percent of Practice revenues. Throughout 2003 her utilization – i.e., the percentage of her time for which PA collected revenue – ranged between 55 and 60 percent, twice the Practice average.

10. Ms. Barnett appeared in the media on numerous occasions while working for PA, including CNN, BBC, Financial Times, The Jerusalem Post, The Washington Post, and several Chinese periodicals. She always insisted that stories about her also feature PA, and as a result the firm received publicity that was both positive and free.

11. In light of Ms. Barnett's achievements, James Miller, the Senior Partner who headed the Transportation Practice, described her performance for the first half of 2003 as "very good!" and gave her the highest numerical rating of any Managing Consultant in the Practice. In addition, Mr. Miller wrote on Ms. Barnett's evaluation that she was "making progress to partner level," and he agreed to recommend her for an extraordinary bonus in October 2003.

<u>Ms. Barnett's Firing</u>

12. On October 17, 2003, Mr. Miller sent Ms. Barnett a letter saying that PA's Transportation Practice was being merged into its Information Technology Practice and that

3

several positions, including hers, were being eliminated due to a reduction in force. She was

terminated effective November 14, 2003.

13. At the time of Ms. Barnett's termination, she had generated more revenue in 2003

than any member of the Transportation Practice save one, a younger man who was not

terminated and who produced just $4,000 more than Ms. Barnett.

14. Before the reduction in force that accompanied Ms. Barnett's termination, nine of the

30 employees in the Transportation Practice were women. Seven of the nine women were

terminated during the reduction in force, leaving just one female consultant.

15. The reduction in force also fell harshly on older employees. PA terminated the three

oldest Managing Consultants in the Transportation Practice, as well as the oldest Principal

Consultant, which is the level immediately below Managing Consultant.

16. These terminations of women and older employees were not correlated with

performance. For example, the Managing Consultants who were terminated included not only

Ms. Barnett, who ranked second in the Transportation Practice in revenue production, but also

the third highest ranking revenue producer, who was the oldest Managing Consultant in the

Practice. Ms. Barnett easily outdistanced many of the men whom PA allowed to remain with the

firm, in terms of revenue production, utilization and marketing.

17. Since its founding, PA has accorded preference to younger men, as documented in

the materials given new employees. As noted above, PA has virtually excluded women from the

ranks of Partner: of 179 Partners, only five are female.

Damages

18. PA's actions as described herein have caused Ms. Barnett monetary and non-

monetary loss. Monetary damage includes loss of base pay, bonuses and PA stock, as well as the

4

opportunity to become a Partner at PA. In addition, the firing itself was wounding to Ms. Barnett and has caused her pain and suffering.

19. PA's actions as described herein were malicious, willful, wanton and in reckless disregard of Ms. Barnett's rights.

## COUNT ONE
### DISCRIMINATION BASED ON SEX

20. Paragraphs 1-19 are realleged.

21. The actions of PA as described herein constituted discrimination based on sex, in violation of the District of Columbia Human Rights Act, D.C. Code § 2-1402.11.

## COUNT TWO
### DISCRIMINATION BASED ON AGE

22. Paragraphs 1-19 are realleged.

23. The actions of PA as described herein constituted discrimination based on age, in violation of the District of Columbia Human Rights Act, D.C. Code § 2-1402.11.

### RELIEF

Plaintiff requests that this Court award her:

1) reinstatement in the position that she would have held in the absence of discrimination;

2) compensatory damages in an amount to be proved at trial, including compensation for past and future financial loss;

3) punitive damages in an amount to be proved at trial;

4) reasonable attorneys' fees and expenses;

5) prejudgment interest on all monetary sums awarded;

6) such other relief as the Court deems just.

Apr-06-04  10:34am   From-P,A, CONSULTING GROUP          2024422594          T-711   P.07/14   F-162

## JURY DEMAND

Plaintiff requests trial by jury as to all issues in this case.

Richard A. Salzman 422497
Douglas B. Huron  89326
HELLER, HURON, CHERTKOF
LERNER, SIMON & SALZMAN
1730 M Street, NW
Suite 412
Washington, DC  20036
(202) 293-8090

Attorneys for plaintiff

6

Apr-06-04  10:34am   From-P,A, CONSULTING GROUP          2024422594        T-711   P.08/14   F-162

## U. S. Equal Employment Opportunity Commission

EEOC FORM 131 (5/01)

| | PERSON FILING CHARGE |
|---|---|
| Human Resources Manager<br>PA Consulting Group, Inc.<br>1750 Pennsylvania, Ave., NW<br>Suite 1000<br>Washington, DC 20006 | **Judith Barnett**<br><br>THIS PERSON (check one or both)<br>[X] Claims To Be Aggrieved<br>[ ] Is Filing on Behalf of Other(s)<br><br>EEOC CHARGE NO.<br>100-2004-00420 |

### NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional information)*

This is notice that a charge of employment discrimination has been filed against your organization under:

[X] Title VII of the Civil Rights Act                     [ ] The Americans with Disabilities Act

[X] The Age Discrimination In Employment Act         [ ] The Equal Pay Act

The boxes checked below apply to our handling of this charge:

1. [ ] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [X] Please provide by  **12-APR-04**  a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. [ ] Please respond fully by                    to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. [X] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by **29-MAR-04** to  the ADR Program at  **(202) 275-0077**
If you DO NOT wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

Janice B. Campbell,
Enforcement Supervisor

*EEOC Representative*

Telephone:  **(202) 275-7377**

**Washington Field Office**
**1400 L Street, NW**
**Suite 200**
**Washington, DC 20005**

Enclosure(s): [X] Copy of Charge

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[ ] RACE   [ ] COLOR   [X] SEX   [ ] RELIGION   [ ] NATIONAL ORIGIN   [X] AGE   [ ] DISABILITY   [ ] RETALIATION   [ ] OTHER

**See enclosed copy of charge of discrimination.**

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| Mar 12, 2004 | Dana Hutter,<br>Acting Director | |

Apr-06-04  10:34am   From-P.A. CONSULTING GROUP          2024422594          T-711   P.09/14   F-162

*Enclosure with EEOC*
*Form 131 (5/01)*

# INFORMATION ON CHARGES OF DISCRIMINATION

## EEOC RULES AND REGULATIONS

Section 1601.15 of EEOC's regulations provides that persons or organizations charged with employment discrimination may submit a statement of position or evidence regarding the issues covered by this charge.

EEOC's recordkeeping and reporting requirements are found at Title 29, Code of Federal Regulations (29 CFR): 29 CFR Part 1602 (see particularly Sec. 1602.14 below) for Title VII and the ADA; 29 CFR Part 1620 for the EPA; and 29 CFR Part 1627, for the ADEA. These regulations generally require respondents to preserve payroll and personnel records relevant to a charge of discrimination until disposition of the charge or litigation relating to the charge. (For ADEA charges, this notice is the written requirement described in Part 1627, Sec. 1627.3(b)(3), .4(a)(2) or .5(c), for respondents to preserve records relevant to the charge – the records to be retained, and for how long, are as described in Sec. 1602.14, as set out below). Parts 1602, 1620 and 1627 also prescribe record retention periods – generally, three years for basic payroll records and one year for personnel records. Questions about retention periods and the types of records to be retained should be resolved by referring to the regulations.

**Section 1602.14   Preservation of records made or kept.** . . . . Where a charge ... has been filed, or an action brought by the Commission or the Attorney General, against an employer under Title VII or the ADA, the respondent ... shall preserve all personnel records relevant to the charge or the action until final disposition of the charge or action. The term *personnel records relevant to the charge*, for example, would include personnel or employment records relating to the aggrieved person and to all other aggrieved employees holding positions similar to that held or sought by the aggrieved person and application forms or test papers completed by an unsuccessful applicant and by all other candidates for the same position as that for which the aggrieved person applied and was rejected. The date of *final disposition of the charge or the action* means the date of expiration of the statutory period within which the aggrieved person may bring [a lawsuit] or, where an action is brought against an employer either by the aggrieved person, the Commission, or the Attorney General, the date on which such litigation is terminated.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Section 704(a) of Title VII, Section 4(d) of the ADEA, and Section 503(a) of the ADA provide that it is an unlawful employment practice for an employer to discriminate against present or former employees or job applicants, for an employment agency to discriminate against any individual, or for a union to discriminate against its members or applicants for membership, because they have opposed any practice made an unlawful employment practice by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the statutes. The Equal Pay Act contains similar provisions. Additionally, Section 503(b) of the ADA prohibits coercion, intimidation, threats, or interference with anyone because they have exercised or enjoyed, or aided or encouraged others in their exercise or enjoyment, of rights under the Act.

Persons filing charges of discrimination are advised of these Non-Retaliation Requirements and are instructed to notify EEOC if any attempt at retaliation is made. Please note that the Civil Rights Act of 1991 provides substantial additional monetary provisions to remedy instances of retaliation or other discrimination, including, for example, to remedy the emotional harm caused by on-the-job harassment.

## NOTICE REGARDING REPRESENTATION BY ATTORNEYS

Although you do not have to be represented by an attorney while we handle this charge, you have a right, and may wish to retain an attorney to represent you. If you do retain an attorney, please give us your attorney's name, address and phone number, and ask your attorney to write us confirming such representation.

Apr-06-04  10:34am   From-P,A, CONSULTING GROUP          2024422594          T-711   P.10/14   F-162



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Washington Field Office

1400 L Street, N.W., Suite 200
Washington, D.C. 20005
General: (202) 275-7377
TTY (202) 275-7518
ADR Phone #: (202) 275-0077
ADR FAX (202) 275-0076
www.eeoc.gov

ADR Coordinator

Dear Respondent:                    RE: EEOC Charge# 100-2004-00420

Enclosed is the Notice of Discrimination (EEOC Form 131), Charge of Discrimination
(EEOC Form 5), and Mediation Fact Sheet for your information. The Equal Employment
Opportunity Commission (EEOC) has determined that the charge referenced above is
eligible for mediation.

| IF YOU AGREE TO MEDIATE → | You MUST return the signed MEDIATION ELECTION below to the ADR PROGRAM | WITHIN 15 DAYS |
|---|---|---|

_____ WILL PARTICIPATE IN EEOC MEDIATION

_____
Name, Title, Phone & Fax

| IF YOU DECLINE MEDIATION  OR  IF YOU FAIL TO RESPOND TO THIS OPPORTUNITY by _3/29/04_ via FAX 202-275-0076, PHONE 202-275-0077 OR MAIL → | The case will be returned to the Enforcement Division for REGULAR CHARGE PROCESSING. AND You MUST submit your POSITION STATEMENT with respect to the allegations to Janice Campbell, Supervisory Investigator. | WITHIN 30 DAYS |
|---|---|---|

_____ WILL NOT PARTICIPATE IN EEOC MEDIATION

_____
Name, Title, Phone & Fax

_____ INCORRECT RESPONDENT

If EEOC has served the incorrect Respondent, please notify us immediately.  List the
correct Respondent contact information below and return via fax.

_____
Name, Title, Address, Phone & Fax

| MEDIATION OCCURS IF → | BOTH PARTIES AGREE to schedule a MEDIATION | WITHIN 45 DAYS |
|---|---|---|

Apr-06-04  10:35am   From-P,A, CONSULTING GROUP          2024422594          T-711   P.11/14   F-162

## Page 2

Mediation sessions are scheduled and conducted by a qualified mediator assigned by the EEOC. The mediator will contact you. *There is no cost to either party for the mediation.*

### WHY SHOULD I TRY MEDIATION?

- Mediation can save everyone both time and money.
- You will not have to prepare a position statement if all matters are resolved in the mediation process.
- The process provides an opportunity to quickly resolve the alleged charge.
- The Mediators are highly skilled professionals trained to help draft creative and flexible settlement options that address the specific needs of the participants.
- Although some cases are resolved by financial settlements, other agreements identify revised work procedures or understandings of changed work behaviors that help the employer and employee quickly get back to productive work.
- A core principle of mediation is confidentiality, and the Mediation Program is strictly separated from the investigative and litigation functions at the EEOC.

### WHAT HAPPENS IF WE DECIDE NOT TO MEDIATE?

- The case will be returned to the enforcement division to be investigated. Investigations can consist of onsite visits by EEOC Federal Investigators to review records and interview employees. Information is also obtained through written questions and request for documents. The EEOC also has broad subpoena power to obtain documents and testimony.

### WHAT HAPPENS IF WE GO TO MEDIATION AND CANNOT COME TO AN AGREEMENT?

- All discussions and documents relating to the mediation are confidential including processing cases in mediation, maintenance of files, and communications with other EEOC staff. All mediation notes are destroyed within seven days. Mediation matters are never disclosed for use in the investigation or in any subsequent process.
- The case will be returned to the Enforcement Division to conduct the investigation which may result in any of the following: a discrimination finding, litigation, settlement or dismissal.

### DO WE NEED AN ATTORNEY TO ATTEND MEDIATION?

- No. Either party may be represented by an attorney if they choose, but it is not required. The parties are responsible for all attorney's fees incurred.

### OTHER MEDIATION QUESTIONS?

You may call Debra Mills, ADR Program Assistant at 202-275-0077 or Debra.Mills@eeoc.gov and she will direct you for all mediation concerns. If she can not be reached then call the assigned mediator or JaQues K. Anderson, ADR Coordinator in cases of emergency. All investigative concerns should be addressed to the Enforcement Division.

8/03

Apr-06-04  10:35am   From-P,A, CONSULTING GROUP        2024422594        T-711   P.12/14   F-162



### U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
**Washington Field Office**

1400 L Street, N.W., Suite 200
Washington, D.C. 20005
(202) 275-7377
TTY (202) 275-7518
FAX (202) 275-0076

## MEDIATION FACT SHEET
### Private Sector

The Washington Field Office of EEOC instituted a Mediation Program in an effort to expedite our normal charge process procedures. Mediation is offered as an alternative to the investigation process which at this time takes at least 8-12 months.

Mediation sessions are conducted by contract mediators, EEOC mediators, or volunteers with training and experience in the area of conflict resolution. Dispute resolution professionals are trained and experienced in handling employment disputes. Mediation is an informal, voluntary process which provides a forum for a discussion of the complaint and the opportunity to enter into an agreement that satisfies the interest of all parties. If the charge is suitable for mediation, the EEOC will contact the parties to invite their participation in the program. If the Charging Party and the Respondent consent to mediation, EEOC will then contact both parties to schedule a session.

Cases are forwarded for investigation if: (1) Charging Party or Respondent elect not to participate in mediation; (2) either Charging Party or Respondent does not answer the offer to mediate within the specified time frame; (3) after agreeing to participate in the program, Charging Party or Respondent withdraws from participation; or (4) an agreement is not reached during the mediation process. If a Charging Party or Respondent does not try mediation or if the mediation attempt is unsuccessful, those facts will not be reflected in the case file and will have no bearing on the investigation of the matter. If an agreement is reached during the mediation process, it must be in writing in order for the charge to be dismissed by the EEOC.

## ADVANTAGES OF MEDIATION

- ◆ Mediation is a voluntary, informal process. No lengthy and time-consuming preparation is required.

- ◆ The sole purpose of mediation is to discuss the charge and resolve it to the mutual satisfaction and in the best interest of all parties.

- ◆ Mediation gives the parties the opportunity to discuss the issues raised in the charge with each other under the guidance of a dispute resolution professional. The parties can clear up misunderstandings, determine underlying interests or concerns, and find areas of agreement. By contrast, litigation can destroy the underlying relationships between the parties.

- ◆ Every effort will be made to schedule mediations within thirty (30) days from the date both parties agree to mediate.

Washington Field Office Mediation Fact Sheet

◆ Mediation does not require the presence of an attorney, although a party may have an attorney present. All principals must speak on their own behalf; attorneys may provide advice to, and consult with, their clients.

◆ Charging Party and Respondent do not have to respond to interrogatories or data requests as part of an investigation.

◆ Mediation is a confidential process. Mediation sessions are not tape recorded or transcribed.

◆ The mediator conducts joint and private confidential sessions with the parties. The mediator does not resolve the charge or impose a decision on the parties. Mediators do not weigh evidence, interview witnesses or determine if discrimination has occurred. "Fact-finding" is not the objective of mediation. However, the mediator may suggest options for agreement.

◆ Mediation agreements do not constitute an admission by the respondent of any violation of the laws that EEOC enforces.

◆ Mediations are generally scheduled at the Washington Field Office and usually last four hours. The majority of cases that are successfully mediated are mediated in one session. A second session is permitted if agreement appears imminent and both parties commit to a followup date.

◆ Mediation agreements result in the closure of cases with the EEOC. If an agreement is not signed at the time of the mediation, the EEOC will permit up to three days for a participant to have the proposed agreement reviewed or approved. After the three-day time period, however, the charge will be assigned to an investigator under the normal charge processing procedure.

◆ Only in the event of an absolute emergency will a mediation be rescheduled. The EEOC must be notified within 48 hours should the need to reschedule occur. **Failure to obtain legal representation will not be grounds for postponement of the session.** Charges will otherwise be forwarded to the enforcement unit to be assigned to an investigator under normal charge processing procedure.

We hope that we have provided you with sufficient information to make an informed decision whether to participate in mediation. If you are interested in mediating this charge, you must acknowledge your consent by completing the enclosed Agreement to Mediate and Confidentiality Agreement. Failure to complete these forms precludes your participation in the mediation program. We will contact you to arrange a mediation session only if **both parties agree to participate.**

Further information about EEOC's Mediation Program, including the results of a study of participant surveys, is available at http://www.eeoc.gov/mediate/index.html.

Apr-06-04  10:36am   From-P,A, CONSULTING GROUP          2024422594          T-711   P.14/14   F-162

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; see Privacy Act Statement.

| ENTER CHARGE NUMBER |
| --- |
| ☐ FEPA |
| ☐ EEOC   100-2004-00420 |

STATE OR LOCAL AGENCY (*if any*)
DC Office Of Human Rights

NAME (*Indicate Mr., Ms., or Mrs.*):
Ms. Judith Barnett

HOME TELEPHONE NO. (*Include Area Code*):
202-364-6423

STREET ADDRESS
4373 Embassy Park Drive, NW

CITY, STATE, ZIP CODE
Washington, DC 20016

COUNTY

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME  (*If more than one, list below.*)

NAME: PA Consulting Group, Inc.

NO. OF EMPLOYEES/MEMBERS:
More than 500

TELEPHONE NUMBER (*Include Area Code*):
202-442-2000

STREET ADDRESS
1750 Pennsylvania Avenue, NW
Suite 1000

CITY, STATE, ZIP CODE
Washington, DC 20006

NAME:

TELEPHONE NUMBER (*Include Area Code*):

STREET ADDRESS

CITY, STATE, ZIP CODE

CAUSE OF DISCRIMINATION BASED ON (*Check appropriate box(es)*)

☐ RACE   ☐ COLOR   ☑ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN

☑ AGE   ☐ RETALIATION   ☐ OTHER (*Specify*):

DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (*Month/Day/Year*)
November 14, 2003 and continuing

THE PARTICULARS ARE (*If additional space is needed, attached extra sheet(s)*):

I am 57 years old and was a Managing Consultant at PA Consulting Group, Inc. (PA), which is one level below partner.  My performance reviews were positive.  I was terminated on November 14, 2003, supposedly because of a reduction in force.  At the time of my termination, I had generated more revenue in 2003 than any member of my practice area except one, a younger man who was not terminated and who produced just $4,000 more than I had.

Before the RIF, 9 of the 30 employees in my practice area were women, but 7 of the women were terminated, leaving just one female professional.  In addition, PA terminated the three oldest Managing Consultants in the practice area, as well as the oldest Principal Consultant, which is the level immediately below Managing Consultant.  These terminations of women and older employees were not correlated with performance.  For example, the Managing Consultants who were terminated included not only me, the second highest ranking revenue producer, but also the third highest ranking person.

PA has 179 partners, of whom only 5 are women.

I believe that PA terminated me because of my age and sex.

☑ I also want this charge filed with the EEOC.
I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY (When necessary to meet State and Local Requirements)

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.
Signature: *Judith Barnett*
Date: 2/10/04

SIGNATURE OF COMPLAINANT

DATE (*Day, month, and year*):